## FT. WORTH & R. G. RY. CO. v. KEITH.

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 29, 1913. Rehearing Denied Jan. 17, 1914.)

1. CARRIERS (§ 318*)—DEATH OF PASSENGER—NEGLIGENCE—EVIDENCE.

In an action for the death of a passenger who attempted to descend from a moving train on the directions of the porter, evidence *held* sufficient to sustain a finding that the porter was negligent.

[Ed. Note.—For other cases, see ˙Carriers, Cent. Dig. §§ 1270, 1307–1314; Dec. Dig. § 318.*]

2. CARRIERS (§ 346*)—CONTRIBUTORY NEGLIGENCE OF PASSENGER—EVIDENCE.

In an action for the death of a passenger who attempted to descend from a moving train on the directions of the porter, evidence *held* sufficient to sustain a finding that deceased was not guilty of contributory negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1401; Dec. Dig. § 346.*]

3. CARRIERS (§ 247*)—PASSENGERS—TRESPASSERS—QUESTION FOR JURY.

Where plaintiff's decedent while asleep was carried past his station and, on suggestion of the conductor, continued on his journey to the next stop, intending to return by another train and on getting off found that it was raining and there was no shelter, re-entered the train, which started on its journey, whereupon the porter showed him the train on a switch on which he could return, deceased was not a mere trespasser or licensee, but a passenger, and the carrier was bound to exercise a high degree of care to enable the deceased to descend.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 984–993; Dec. Dig. § 247.*]

4. CARRIERS (§ 317*)—CONTRIBUTORY NEGLIGENCE OF PASSENGER — PLEADING — EVIDENCE.

Although it may not be the duty of a carrier to awake a sleeping passenger at his station, yet, in view of a plea of contributory negligence in that the deceased did not awake and get off, evidence that it was a custom with said carrier to awake passengers was admissible as explaining deceased's subsequent status on the train and as tending to show that he was not necessarily in fault in having failed to alight.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1295, 1297–1305; Dec. Dig. § 317.*]

5. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Where deceased, a passenger, was not awakened at his station, and had to continue on the train, and he was afterward killed, the admission of evidence that there was a custom of awakening sleeping passengers cannot be *held* prejudicial on the ground that it admitted proof of negligence too remote to be the proximate cause of the death, where the court did not authorize a recovery on that ground.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

6. DEATH (§ 68*) — DAMAGES — EVIDENCE OF CHARACTER OF DECEASED—EXPECTANCY OF BENEFITS.

In an action for damages for wrongful death of an adult, evidence that deceased was an industrious and energetic man, had purchased a home for his mother, the plaintiff, and her grandchildren, and that he was their sole support, was admissible on the issue of the reasonable expectancy of pecuniary benefits which plaintiff would have received from her son had he lived.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 86, 87; Dec. Dig. § 68.*]

7. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR—INSTRUCTIONS—GROUNDS OF RECOVERY.

In an action against a carrier for wrongful death, where the deceased was carried past his station because asleep and, on the suggestion of the conductor, was going to the next stop and return by another train, and he got off at that stop and, not seeing the other train, re-entered the train which started on, and was killed in the attempt to get off again, an erroneous instruction that deceased was a passenger between his station and the first stop was harmless, where no ground of recovery was

authorized for anything done or omitted between those two points.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221-4224; Dec. Dig. § 1064.*]

8. CARRIERS (§ 320*) — PROXIMATE CAUSE — QUESTIONS FOR JURY.

Whether the act of defendant's porter in directing or commanding a passenger to alight and shoving him toward the door of a moving train and defendant's failure to stop the train could have been the proximate cause of the passenger's death, he having been killed by being run over when alighting, was a question for the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1118, 1126, 1149, 1153, 1160, 1167, 1169, 1179, 1190, 1217, 1233, 1244, 1248, 1315-1325; Dec. Dig. § 320.*]

9. NEW TRIAL (§ 102*)—NEWLY DISCOVERED EVIDENCE—DILIGENCE.

Where affidavits of persons who had been present at the time of the taking of a deposition were introduced to show that testimony in the deposition was false, and the deposition had long been on file and disclosed the names of the witnesses whose affidavits were relied upon, one moving for a new trial on the ground of newly discovered evidence was clearly without diligence in securing such evidence and was not entitled to a new trial.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 207, 210-214; Dec. Dig. § 102.*]

Appeal from District Court, Erath County; W. J. Oxford, Judge.

Suit by Martha A. Keith against the Ft. Worth & Rio Grande Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Andrews, Ball & Streetman, of Houston, and J. C. George, of Brownsville, for appellant. J. B. Keith, of Stephenville, and Carlock & Carlock, of Ft. Worth, for appellee.

CONNER, C. J. Appellee recovered a judgment for $6,750 as damages for the death of her adult son, Edward W. Keith, on the night of May 14, 1912, at Harbin in Erath county, Tex. As alleged, and as there was evidence tending to show, Edward Keith was unmarried and the sole support of his widowed mother and several of her grandchildren. On the night in question he took passage at Ft. Worth, Tex., for his home in Stephenville on one of appellant's passenger trains that was due to arrive at Stephenville about 2 o'clock a. m. He was asleep when the train arrived at Stephenville, and at the instance of the conductor continued some six miles beyond to Harbin, a way station, where appellant's north-bound passenger train going in the opposite direction was expected, and upon which Edward Keith intended to take passage and return to Stephenville. With this introductory statement the crucial issues will be understood by a consideration of the third paragraph of the court's charge, upon which appellee's right to recover was made to depend, and which reads as follows:

"Now, bearing in mind the foregoing, you are instructed that if you believe from a preponderance of the evidence in this case that when the defendant's passenger train, upon which the said Ed. W. Keith was riding on the night of the accident, first arrived at the station of Harbin, that the defendant's porter on said train caused or directed the said Keith to depart from said train at a time when the weather was cold and a rain was falling; and if you further believe from the evidence that there was not at said station any north-bound passenger train visible to the said Keith from the place where he left said train; and if you further believe that there were no lights at said station and no depot facilities at said place for the accommodation of a passenger at that time of night; and if you further believe that the place at which the said Keith left said train the first time was not a proper or suitable place for him, under the circumstances surrounding him at said time, to depart from said train and remain at said place; and if you further believe that he was induced to leave said train at said time and place by the assistance or direction of the defendant's porter; and if you further believe that it then and there reasonably appeared to the said Keith, from all the circumstances then surrounding him, that there was no north-bound train there to return him to Stephenville; and if you further believe that the said place then and there was an unsuitable one for him to remain, in view of all the circumstances; and if you believe that said Keith, acting upon such belief, re-entered the said coach which he had left, for the purpose of continuing his passage on said train, as a passenger, if you find that such was his purpose in so entering said coach; and if you further believe that in doing the things which you find from the evidence that the said Keith did do up to said time that he was then and there exercising the care of a person of ordinary and reasonable care and prudence, and such care and prudence as such a person would have exercised under the same or similar circumstances; and if you further believe that shortly after he had re-entered the said coach in the defendant's train, and before the said train had left the station yard at Harbin, that the defendant's porter did look to the west and see the said north-bound passenger train standing on the west side track, and did thereupon call out to the said Keith in a loud or commanding tone of voice: 'Yonder is your train, go out that way,' pointing or directing the said Keith to leave the said train on the west side thereof; and if you further believe that the said porter did then and there urge, shove, or influence the said Keith to then and there attempt to leave said train on the west side thereof, and while it was moving out of said yard at said station; and if you further believe that it was within the power of the said porter to then and there cause

the said train to be stopped for the purpose of enabling the said Keith to depart therefrom in safety; and if you further believe that under all the circumstances it was his duty to do so; and if you further believe from the evidence that he did fail to do so; and if you further believe from the evidence that the said Keith in leaving said train at said time and place was induced to do so by the acts and words of the said porter at said time, if you find that the said porter did use words or acts at said time reasonably calculated to induce the said Keith to leave said train at said time and place, and that the said Keith would not otherwise have done so; and you further find that the said Keith in leaving the said train at said time, considering all the circumstances surrounding him, exercised ordinary care; and you further find that as a result of the attempt of the said Keith to leave the said train at said time and place he stumbled or slipped and fell under the wheels of said train, and sustained injuries which caused his death, and if you further find that said porter in causing or inducing the said Keith to leave said train on the west side thereof, at the time he was killed, if you find that he did cause or induce the said Keith to do so, when viewed in the light of all the surrounding circumstances, was guilty of negligence, as that term is defined in this charge; and if you further believe that such negligence, if any, was the proximate cause of the death of the said Keith—then, if you so find and believe, you will render a verdict in favor of the plaintiff for the damages, if any, sustained by her by reason of the death of her son, Ed. W. Keith, unless you find in favor of the defendant under other instructions given you in this charge."

Appellee's evidence raised the issues so presented, and it is sufficient to support the verdict thereon, and the vital question presented by appellant's assignments is one of liability. It is insisted, in effect, that the deceased in re-entering the train at Harbin was but a trespasser or licensee, and that hence the court erred in imposing upon appellant, as was done in clauses of the charge not quoted, that high degree of care required of carriers in the transportation of passengers, and also that it conclusively appears that the deceased was guilty of contributory negligence.

[1, 2] The evidence, in substance, shows that the deceased awoke soon after the train upon which he had taken passage left the station at Stephenville, and that, when he approached the conductor complaining that he had not been awakened, the conductor suggested that he continue on the train until its arrival at Harbin because of a very hard rain falling at the time; that, when the train arrived at Harbin, the porter at the direction of the conductor opened the doors, and the deceased descended to the ground; that there was no light or station house at Har-

bin; and that it was yet raining hard; and that the deceased evidently failed to see the light of the north-bound train, the light being obscured by some standing box cars. He thereupon, very soon after the train upon which he had been a passenger began its onward journey, re-entered the train, and, calling to the porter, said that there was no north-bound train at Harbin; that the porter at once pointed to the opposite side of the train, saying, "There is your train, go out that way," and the deceased descended on the opposite side from that of his first descent, and, evidently slipping, fell back under the train receiving his death injuries. The porter testified that when he stated that "there is your train" the deceased instantly, very hurriedly and rapidly, and of his own accord, rushed out of the door and jumped off of the train; that he (the porter) called and tried to stop him. In this, however, the porter was contradicted by two other witnesses who were in that part of the car from which the deceased proceeded. They state that, when the deceased's attention was so called to the north-bound train, the porter pointed to it and to the door, and, as one of them testified, directed him to go out that way in a commanding tone and shoved or pushed him. Under the court's charge, which we have quoted, we think the issue was properly one for the jury, and that the evidence referred to is sufficient to support the verdict in appellee's favor on both the issue of the porter's negligence and a want of contributory negligence on the part of the deceased.

[3] The deceased was a well-known business man of Stephenville, and the evidence indicates had manifested his anxiety to return to Stephenville that night, and the inference is strong that in reboarding the train at Harbin he did so because of a want of suitable accommodation at Hardin, and with the purpose of proceeding on his journey until he arrived at Dublin, some six miles farther, where there were accommodations for staying the remainder of the night, and it cannot be said, under such circumstances, that the appellant was not legally bound to exercise that high degree of care to enable the deceased to descend from the train with reasonable safety. Nor do we think it can be said as a matter of law that the deceased was guilty of contributory negligence in descending from the train at the time and under the circumstances he did. The jury might reasonably conclude that under the circumstances a man in the exercise of reasonable care and prudence for his own protection would rely upon the implied assurances at least arising from the command or direction of the porter that he could safely alight. Railway v. Whitley, 43 Tex. Civ. App. 347, 96 S. W. 109; Railway v. Krenek, 138 S. W. 1154; Railway v. Brown, 4 Tex. Civ. App. 437, 23 S. W. 618; Railway v. Smith, 59 Tex. 406; Railway v. Dorough, 72 Tex. 111, 10 S. W. 711;

Railway v. Jackson, 38 Tex. Civ. App. 205, 85 S. W. 445; Mills v. Railway, 94 Tex. 242, 59 S. W. 874, 55 L. R. A. 497; Railway v. Viney, 30 S. W. 252; 3 Hutchinson on Carriers (3d Ed.) § 1179.

[4] Error is also assigned to the testimony of a number of witnesses, to the effect that it had been a custom on the part of appellant's train operatives to wake passengers destined for Stephenville on its night trains, but appellant had pleaded that the deceased was guilty of contributory negligence in a failure to awake and leave the train at Stephenville, and the evidence further tended to show that the custom to which the witnesses testified had been long continued and, while it is undoubtedly true, as a general proposition, that it is not the duty of the carrier to awake a sleeping passenger on the arrival of the train at his station, yet, in view of the plea of contributory negligence referred to, we think the testimony was admissible as explaining the deceased's subsequent status on the train and as tending to show that he was not necessarily in fault in having failed to alight at his intended destination.

[5] To the suggestion that the court thus admitted proof of negligence too remote to be the proximate cause of the injury, it will be sufficient to say that the court did not authorize a recovery on any such ground.

[6] Objection was also made to the evidence of J. N. Jordan and a number of other witnesses to the general effect that the deceased was an industrious and energetic man, that he had purchased a home into which he had moved his mother and two of her grandchildren, and that he constituted their sole support. This evidence we think was clearly admissible on the issue of the reasonable expectancy of pecuniary benefits which plaintiff would have received from her son had he lived. Railway v. Cowser, 57 Tex. 304; Mill & El. Co. v. Anderson, 98 Tex. 160, 81 S. W. 282, 1 L. R. A. (N. S.) 198; Railway Co. v. Wright, 29 S. W. 1134.

[7] The charge is objected to on the ground that the jury were instructed that the deceased was a passenger between Stephenville and Harbin. This we think, under the facts, was clearly so, and the court therefore committed no error in this respect. Besides, the instruction, if erroneous, would seem to be immaterial, as no ground of recovery was authorized for anything done or omitted on the part of appellant's servants between Stephenville and Harbin.

[8] The paragraph of the court's charge which we have quoted is also objected to on the ground that the facts submitted "could not have been the proximate cause" of the death of the deceased. We think we have, however, stated the facts sufficiently for it to be apparent that this issue was by the court properly left for the determination of the jury.

[9] It is also insisted that the court should have sustained appellant's motion for new trial on the ground of newly discovered evidence, but it was made to appear so clearly on the hearing of the motion before the trial court that appellant was wholly without diligence in securing the alleged newly discovered evidence that we feel like it is unnecessary to go into the question particularly. It will be sufficient, we think, to say that the effort was to show by affidavits of certain persons who had been present at the time of the taking of the deposition of that one of appellee's witnesses who testified that the porter in a commanding tone of voice directed the deceased to go out the door immediately preceding his injuries, had testified falsely in that respect, but it appeared that the deposition had long been on file and that the deposition when returned into court disclosed the names of the witnesses whose affidavits were relied upon. There was also evidence in behalf of appellee from the same witnesses explaining and contradicting the affidavits that had been taken in behalf of appellant, so that on the whole it appeared as stated that no sufficient diligence had been exercised, and also that it is altogether improbable that the alleged newly discovered evidence would, if admitted, have appreciable influence upon another trial.

We conclude that the evidence supports the material allegations in appellee's petition; that all assignments should be overruled, and the judgment affirmed.