## ATCHISON, T. & S. F. Ry. CO. v. FRANCIS.
### (No. 1726.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 5, 1921. On Motion for Additional Finding, Jan. 19, 1921. Rehearing Denied Jan. 26, 1921.)

**1. Master and servant ☞295(1)—Assumed risk not clearly defined.**

Instruction *held* defective in not clearly stating that employé assumed risk of known or obvious dangers, though arising from defendant's negligence.

**2. Master and servant ☞235(4)—Employé may rely on master's care.**

Employé has right to rely on the master's furnishing safe tools and appliances and a safe place to work, and need not use ordinary care to learn of defects and dangers therein.

**3. Courts ☞97(5)—Assumed risk defense under federal act.**

The law as to assumed risk as announced by the federal courts should be given by instructions in a case arising under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665).

**4. Trial ☞234(7)—General charge as to burden of proof erroneous as to one special issue.**

As regards the special issue, in an employé's injury case, Was the place furnished a reasonably safe one to work? the general charge, requiring the affirmative of any special issue to be proved by a preponderance of the evidence, erroneously places the burden of proof on defendant.

**5. Trial ☞352(1) — Special issue as to assumption of risk unobjectionable in form.**

The special issue in action for death of an employé, Did he assume the risk of being injured or killed? was not objectionable by reason of the words "or killed," though it would be sufficient without them.

**6. Death ☞104(4)—Form of instruction approved.**

Omission of the words "and did expect" from the instruction as to damages for death of plaintiff's son, that the jury might consider the pecuniary benefit that plaintiff had a reasonable right to expect, and did expect, deceased would have been to him, would eliminate a possibility of misconstruction by the jury.

**7. Evidence ☞314(1)—Testimony of one not present at accident as to how it occurred, hearsay.**

Testimony of one who did not see the accident, as to how a shaft caused the death of one engaged in reaming out a cylinder, is hearsay.

**8. Witnesses ☞248(2)—Parts of answers not responsive.**

Parts of answers to various questions in action for death of employé through machinery, *held* objectionable, as not responsive.

**9. Death ☞72—Financial and physical conditions of beneficiaries under federal Employers' Liability Act may be shown.**

It is proper in action, under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), for death of a son, to inquire into the financial and physical condition of the beneficiaries.

**10. Witnesses ☞389—Testimony of hearing witness make a statement denied by him admissible for impeachment.**

Defendant's witness having on cross-examination denied making a statement at a certain time and place, plaintiff's testimony that he heard him make it was admissible for purpose of impeachment.

**11. Witnesses ☞248(2)—Part of answer not responsive.**

Part of answer, to question whether there were any safety devices on the shaft that killed deceased, that they were put on after he was killed, was objectionable as not responsive.

**12. Trial ☞352(1)—Special issue as to contributory negligence too general.**

Defendant, having alleged deceased was guilty of contributory negligence in doing several enumerated things, had a right to have these facts affirmatively presented to the jury for their finding, and so a special issue, Was deceased guilty of contributory negligence just before and at the time he was injured? was too general.

**13. Appeal and error ☞1036(5)—Reversal not required by failure to dismiss as to an unnecessary party.**

Though there may not be a personal judgment against the railroad for injury to an employé during government control, error in not dismissing the company from the action and proceeding only against the agent appointed by the President is not so serious as to require reversal.

**14. New trial ☞102(1)—Granted in interest of justice for newly discovered evidence though sufficient diligence be not shown.**

Though the motion does not show sufficient diligence, the ends of justice require the granting of new trial, in action for death of a son, for newly discovered evidence that the parents will receive, during life, $50 a month insurance from government insurance for death of another son in war.

**15. Death ☞99(1)—$12,000 for death of son held excessive.**

Verdict of $12,000 for death of an adult son *held* excessive to the extent of $9,000, in view of son's wages, the fact that the parents had other children, and had for life $50 a month from government insurance for death of another son in war.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Action by J. H. Francis, administrator, against the Atchison, Topeka & Santa Fé Railway Company and others. Judgment for plaintiff, and the named defendant appeals. Reversed and remanded.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Madden, Trulove, Ryburn & Pipkin, of Amarillo, and Terry, Cavins & Mills, of Galveston, for appellant.

L. C. Barrett and C. B. Reeder, both of Amarillo, for appellee.

HALL, J. This suit was instituted by appellee, Francis, as administrator of the estate of Porter Francis, deceased, against the Atchison, Topeka & Santa Fé Railway Company, the Panhandle & Santa Fé Railway Company, and Walker D. Hines, agent, appointed by the President of the United States, to recover damages on account of the death of Porter Francis, son of the plaintiff, which occurred as a result of an accident at the shops of the Atchison, Topeka & Santa Fé Railway Company, at Clovis, N. M. Plaintiff alleges that on or about January 12, 1918, his son, Porter Francis, was assisting defendant's foreman in doing what is known as reaming out a cylinder, the machine being operated by a motor by means of a shaft which had two knuckles thereon, which were weak and defectively constructed, by reason of which said shaft became unfastened and one end broke and swung around and struck said Porter Francis, knocking him to the floor, and so injuring him that he shortly thereafter died. The grounds of negligence, as alleged by plaintiff, are as follows:

(1) That the foreman negligently turned on the power suddenly and with full force, causing the shaft to come loose.

(2) That the shaft was defectively constructed, was old and worn and of insufficient strength.

(3) That the defendants furnished a shaft with fastenings which were insufficient.

(4) That the foreman was not a skillful workman, and had insufficient experience in such work, which caused him to turn the power on suddenly, producing the accident.

(5) That the shaft and the ends thereof were weak and defectively constructed.

(6) That the fastenings to the shaft were not constructed of sufficient strength, and not fastened to the ends thereof in proper manner.

(7) That it was the duty of defendants to have a cup or safety appliance called a shield at the joints in and about the machinery of the shaft to make the same stronger, and to help to keep it from coming loose and catching the person or clothes of persons working thereabout.

(8) Failure to provide a reasonably safe place to work.

(9) Failure to provide reasonably safe machinery with which to perform said work.

(10) Negligence in the foreman in not being stationed in the proper place so that he might observe said machinery and be able to prevent the accident by stopping the machinery.

(11) Plaintiff likewise sought to avail himself of the doctrine of res ipsa loquitur.

(12) Failure to warn deceased that said shaft was likely to break loose and injure him, and that it was dangerous to work near it. Plaintiff further alleged that the deceased contributed $50 a month to the support of his father and mother; that he was 29 years of age, and plaintiff and his wife were about 55 years of age, and that their life expectancy was 21 years, and claimed damages in the sum of $15,000. It is further alleged that deceased was engaged in interstate commerce at the time of his death, and, if not, he was injured in the state of New Mexico, and under the law of that state plaintiff's right to recover and the rules applicable thereto are the same as under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665).

Before answering, defendant filed a motion to dismiss the railway companies as parties to the suit, setting up the fact that the cause of action arose during federal control, and that under section 206c of the Act Terminating Federal Control of Railroads (41 Stat. 462), the suit should proceed only against the agent so appointed by the President. This motion was overruled by the court. Defendant's answer consists of a general demurrer, several special exceptions, a general denial, and the following special pleas:

(1) Special denial of partnership.

(2) Denial that they were in any respect guilty of negligence, but that said injury resulted from an unavoidable accident, where no one was at fault, and was one of the ordinary risks and hazards of railway employment, particularly in the operation of heavy machinery.

(3) Contributory negligence on the part of deceased in getting too close to the shaft of the boring machine and in pushing against or leaning upon the shaft or against the knuckle or joint thereof, so that his clothes might get caught should the joint come in two, or unnecessarily placing his body in danger or peril, so that he might get struck in case the shaft did come unjointed or his clothes caught in the revolutions thereof; and

(4) Assumption of risk, ordinary and extraordinary.

The court directed a verdict in favor of the Panhandle & Santa Fé Railway Company, and submitted the case to the jury upon eight special issues, contained in the main charge and two additional issues requested by the defendants.

There was a verdict for appellee against the Atchison, Topeka & Santa Fé Railway Company and Walker D. Hines, agent, in the sum of $12,000.

[1-3] The first assignment of error attacks paragraph No. 2 of the court's charge as being an incorrect definition of assumed risk. By the second and third assignments complaint is made of the refusal to give appellant's special issues on assumed risk, and by the fourth assignment appellant complains that the court erred in refusing to give its special charge, defining assumed risk. By

paragraph No. 2 the court instructed the jury in part:

"When the deceased, Porter Francis, entered into the employment of the defendant Atchison, Topeka & Santa Fé Railway Company he assumed all the risk and danger ordinarily incident to the business in which he was engaged at the time of his death, but he did not_assume the risk which arose, if any did arise, from the negligence of said defendant, if it was guilty of negligence. The deceased also assumed all the risks and danger of which he knew and all the risks and danger of which he necessarily learned in the discharge of his duties in time to have prevented the injury."

Appellant insists that under this language the jury could have understood that the deceased would in no event assume a risk arising from negligence. It may be possible that the language used is susceptible of such construction. In any event, it does not clearly charge the jury that defendant, though negligent, would not be liable if the deceased knew of such negligence, and knew of the risks and dangers arising therefrom, or if such defects were open and apparent, such that an ordinarily prudent man would have discovered them, and appreciated the danger. Special issue No. 4, with the charge appended, we think is subject to the objection made to it, because it required Porter Francis to exercise ordinary care to learn of the defects and dangers, when as a matter of law he had the right to rely upon the master furnishing safe tools and appliances and a safe place to work. The charge which is a part of special issue No. 12, is subject to the same objection. Since the judgment must be reversed, we suggest to counsel and the court that the rules governing instructions upon assumed risk in cases arising under the federal Employers' Liability Act, as announced by the federal courts control (P. & S. F. Railway Co. v. Brooks, 199 S. W. 665); and the better practice in such cases is to follow the law as announced in the federal cases.

[4] It is insisted under the fifth assignment that the court erred in submitting special issue No. 1, because it is not authorized by the evidence, in that there is no competent evidence that would justify a finding that .deceased was not furnished with a reasonably safe place to work, and that this issue in connection with paragraph 1 of the charge incorrectly places the burden of proof as to such issue on the defendants. Special issue No. 1 is:

"Was the place that defendant Atchison, Topeka & Santa Fé Railway Company furnished to deceased, Porter Francis, to work at the time he was injured under the circumstances a reasonably safe place to work?"

In paragraph 1 the court charged the jury:

"The burden of proof in this case, unless hereafter otherwise charged, is such that, if the affirmative of any special issue is proved by a preponderance of the evidence, you will answer such special issue in the affirmative, and if the affirmative of such issue is not proven by a preponderance of the evidence you will answer it in the negative."

The court nowhere specifically charged the jury as to the burden of proof of the facts submitted in special issue No. 1. A similar condition of the record as is presented by this assignment was considered by this court in C. & S. Railway Co. et al. v. Rowe, 224 S. W. 928, and the conclusion reached that it would have presented reversible error if it had been properly before this court. In the instant case we think appellant's contention is sound, and the issue and paragraph of the charge as presented had the effect of placing the burden of proof as to this issue upon appellant. However, it would not alone work a reversal of this case since the judgment might be sustained upon the fourth special issue and the answer of the jury thereto.

[5] It is insisted under the sixth assignment of error that the court erred in submitting issue No. 5, as follows:

"Did Porter Francis, in engaging in the work he was doing when he was injured, assume the risk of being injured or killed?"

We think the issue would have been sufficient if the words "or killed" had been omitted, but since the facts show that Francis was killed, the issue as submitted presents the facts shown by the testimony.

[6] Special issue No. 8 and the instruction following it are:

"What amount of money, if paid at present, would reasonably compensate plaintiff, J. H. Francis, for the damages he has sustained, if any, as a proximate result of the negligence, if any, of defendant Atchison, Topeka & Santa Fé Railway Company?"

"In considering this special issue No. 8, if in answer thereto you find any amount of money for plaintiff, you may consider the pecuniary benefit, if any, that plaintiff had a reasonable right to expect, and did expect, deceased would have been to him, had he not been killed."

The objection to this charge is that it authorized the jury to find the amount which appellee "did expect" to receive from deceased when he was only entitled to such pecuniary benefit as he had a reasonable right to expect. We doubt if the charge is subject to the objection, but it would have been clearer and have avoided a possibility of misconstruction by the jury if the words, "and did expect" had been omitted.

[7, 8] The deposition of George Hall, who was working in appellant's shops at Clovis, at the time of the injuries, was offered in evidence. He testified that he did not see Porter Francis at the time he was injured, and was not personally acquainted with him; that he did not know whether the shields were over the knuckles of the shaft at the time of the accident, or whether they were placed over the joints after the injury. The twelfth

direct interrogatory to this witness is as follows:

"Did the end of this shaft come loose or break before this man was killed or just after he was killed?"

He answered:

"It came loose before he was killed. The broken knuckle caught him and flipped him over and killed him by striking his head against an iron plate or piece of flat iron on the floor there."

The last sentence of this answer was objected to because it was shown by the witness' testimony that he did not see the accident; that it was hearsay; was not responsive to the question, and a voluntary statement of the witness. We think these objections should have been sustained. Similar objections were made to the eighth direct interrogatory, to the witness B. L. Johnson, and his answer thereto. He was asked:

"About how long before such killing had you noticed these places with regard to the place where the cups or shields were usually placed upon such machinery?"

He answered:

"I noticed the machinery every day along there, and these protected cups and shields, or whatever is the proper name for them, were put on three or four days after Porter Francis was killed. They had not been there before that time."

Only that part of the answer in which he said, "I noticed the machinery every day along there," should have been admitted. The answer of this witness to the thirteenth interrogatory propounded to him was objected to because it was not responsive, and was a direct statement of the witness. The interrogatory is:

"If these shields or couplers of knuckles had been over this joint state whether or not this shaft could have slipped out and struck and killed the deceased."

Answer:

"It could have come out, but there would have been nothing to have caught. Had they been in there, he could not have been killed in the manner he was."

We think the last sentence of this answer is subject to the objection urged against it.

[9] It is insisted under the thirteenth assignment of error that the court erred in permitting the plaintiff to testify in answer to questions propounded by his counsel, to the effect that he had been feeble during the last few years, was not strong, and was broken down in health; that deceased, Porter Francis, had been practically his only support, turning over his pay check to him, etc. The objection to this testimony is that it was irrelevant and immaterial, and was not the proper measure of damages. We think this testimony was all admissible. In cases of this character it is proper to inquire into the financial and physical condition of the beneficiaries. It is a reasonable supposition that the amount contributed by Porter Francis would be in proportion to the need of his parents. The admissibility of this kind of evidence is sustained by the weight of authority. Nashville, etc., Ry. Co. v. Anderson, 134 Tenn. 666, 185 S. W. 677, L. R. A. 1918C, 1122, note 1136, Ann. Cas. 1917D, 902; Pittsburgh, etc., Ry. Co. v. Collard, 170 Ky. 239, 185 S. W. 1108, L. R. A. 1918E, 278, note 284.

[10] The court permitted appellee to testify, over the objections of the defendant, that he heard defendant's general foreman, Flanders, say that there were no shields over the knuckles of the shaft at the time of the accident, and that such statement was made along in July, 1918. While the witness Flanders was on the stand he testified:

"I certainly didn't tell you [appellee's counsel] that there were no shields on the shaft at the time of the accident."

It appears from the statement of facts that plaintiff's counsel and appellee went to Clovis in the summer of 1918, to investigate, and the witness was asked if he did not at that time make such statement. Having denied making the statement, we think the evidence was admissible for the purpose of impeachment.

[11] The seventh direct interrogatory to the witness Johnson is:

"State whether or not there were any safety devices or cups or shields over the joints of this shaft that flew out and struck him and killed him."

He answered:

"There were not before he was killed, but they were put on there after he was killed."

The latter part of this answer was objected to as not being responsive to the interrogatory, and we think the objection should have been sustained.

Appellant requested the following special issues, which were refused by the court:

"Special issue No. 1: (a) Was the deceased, Porter Francis, negligent in getting too close to the boring machine or the driving shaft or against the knuckle or the joint thereof?

"(b) If you find that the deceased was negligent under subdivision (a) above, then was such negligence the proximate cause of the injury resulting in his death?"

"Special issue No. 3: (a) Was the deceased negligent in so placing himself with reference to said driving shaft that his clothes might have been caught in the revolution thereof?

"(b) Was such negligence the proximate cause of the injury, resulting in his death?"

[12, 13] Special issue No. 6, presented in the main charge of the court is:

"Was Porter Francis guilty of contributory negligence just before and at the time he was injured?"

Special issue No. 6 was objected to as being too general. We think this objection is well taken. Defendant alleged that the deceased was guilty of contributory negligence in getting too close to the machine, in pushing and leaning against the shaft and the knuckle of the joint; in placing his body in a place of danger or peril where his clothes might be caught. Appellant had the right to have these facts affirmatively presented to the jury for their finding. G., C. & S. F. Ry. Co. v. Mangham, 95 Tex. 413, 67 S. W. 765. It is contended under the eighteenth, nineteenth, and twentieth assignments that the court erred in not dismissing the Panhandle & Santa Fé Railway Company and the Atchison, Topeka & Santa Fé Railway Company from the suit, and proceeding only against Walker D. Hines, as agent. This question has been discussed by this court in the case of Hines v. Collins, 227 S. W. 332, not yet [officially] reported, and the conclusion announced that appellee was not entitled to a personal judgment against the railway companies for injuries resulting while the road was in the hands of the United States government. The error, however, is not so serious as to require a reversal of the judgment.

[14] Under the twenty-first assignment appellant contends that the court erred in overruling its motion for new trial upon the ground of newly discovered evidence. It was alleged in the motion that since the trial of the case appellant had learned for the first first time that one of the plaintiff's sons, Jesse Francis, died while in the army in France, carrying a large amount of insurance, in favor of plaintiff, and that plaintiff now receives from the government of the United States approximately $50 per month, as insurance money, and will continue to receive such amount, by reason of which fact the judgment is grossly excessive. It is further alleged that appellant's failure to discover this evidence was through no fault or negligence of its own; that it did not know the said son, Jesse Francis, was dead until the fact was testified to by plaintiff upon the trial and upon cross-examination, and even then plaintiff did not disclose the fact that this son was killed while engaged with the military forces of the Allies in the World War, nor did appellant learn of the fact that plaintiff was receiving the insurance money until after the conclusion of the trial. In reply to this motion appellee contends that his cause of action accrued at the time of the death of Porter Francis; that at such time he was not receiving any insurance money, and there was no prospect that it would be received; that his other son, Jesse Francis, was not dead at the time of the death of Porter Francis; that he did not die for about a year after the infliction of the injury which resulted in the death of Porter Francis. Upon the question of diligence appellee showed that Jesse Francis died in January, 1919;

that a short time thereafter appellee endeavored to collect from appellant $231 back pay due Jesse Francis; that appellant refused to pay said sum to appellee until he had administered upon the estate of Jesse Francis; that after he had been appointed administrator he collected the said sum from defendant. The materiality of the testimony is apparent. If the jury had known that appellee was receiving $50 monthly it would have, no doubt, reduced the amount of the judgment. Appellee's pleadings tended to negative the receipt of any such sum, and, although under his oath he was bound to state the whole truth, when testifying as to his financial condition, he made no mention of this income. The case was tried in Potter county, and was, of course, prepared by appellant's counsel for trial long before the death of Jesse Francis. While the death of this son came to the knowledge of one of appellant's departments, possibly in New Mexico, it appears that the attorneys and those in charge of the legal department of appellant's affairs, and in charge of this case, knew nothing of the facts until at the time of the trial and afterward. As held in Railway Co. v. Forsyth, 49 Tex. 171, the requirement of the exercise of and a showing of diligence in preparing this case for trial and the discovery of the facts set up in the motion would demand an impossibility when measured by the strict statutory rule as applied to suits between individuals. The motion for new trial does not show sufficient diligence; but, under the peculiar circumstances surrounding this case, we think, in view of the importance of this testimony, the ends of justice required the trial court to grant the motion.

[15] It is further insisted that the judgment for $12,000 is excessive. This assignment is also sustained. At the time of his death, Porter Francis was 29 years of age. No legal obligation to support his parents rested upon him. The plaintiff had two younger sons, besides a married son and a married daughter. The $12,000 awarded plaintiff, if loaned at current rate of interest, payable monthly, would bring to plaintiff the sum which he says he was receiving from his deceased son, Porter. At the time of Porter's death he was earning 22 cents per hour, or approximately $2.60 a day. There is no evidence that he had ever promised not to marry or that he would not marry, nor is there any evidence as to what he was going to do in the future with reference to taking care of plaintiff and his wife. These considerations and the further fact that plaintiff and his wife are at present and will during their lives receive $50 per month from the government, as the proceeds of the government insurance upon the life of Jesse Francis, confirm us in the opinion that the judgment is excessive.

For the reasons stated, the judgment is reversed, and the cause remanded.

## On Motion for Additional Finding.

Appellee moves the court to make an additional finding herein, stating in what amount in the opinion of this court appellee would be entitled to recover under the facts. Appellee's attorneys join in the request. It is the opinion of the court that $3,000 would be a sufficient amount to compensate the appellees under all the circumstances.