### TEXAS MOTOR COACHES, Inc., v. McKINNEY.

No. 13592.

Court of Civil Appeals of Texas. Dallas.
Feb. 16, 1945.

Rehearing Denied March 16, 1945.

Strasburger, Price, Holland, Kelton & Miller, of Dallas, for appellant.

Hamilton, Lipscomb, Wood & Swift, of Dallas, for appellee.

YOUNG, Justice.

Appellee's suit in the trial court was for personal injuries suffered November 27, 1940, while riding as a passenger on defendant's bus from Fort Worth to Dallas, claiming that a heavy metal object fell from the front dashboard on her legs; and upon trial, jury verdict and judgment for $2,500, the bus company has duly appealed. Defendant denied that the occurrence resulted from any negligence attributable to it; in which connection a detail of the jury issues and answers is deemed unnecessary, except to state that same limited the injury complained of to plaintiff's right leg, and are inclusive of findings that said injuries resulted from a falling metallic object negligently left unattached by defendant.

Plaintiff produced no medical testimony whatever concerning the nature and extent of her injuries; alleging however that Dr. Ruth Jackson had attended her from date thereof to September 1941. In support of motion for new trial, defendant sought

to introduce the testimony of such physician, which the court refused to consider, the particular testimony here appearing in bill of exceptions. Thus prefaced, defendant's points of error may be stated, quoting therefrom in material part: The trial court's error (1) in so refusing to consider the testimony of Dr. Jackson to the effect that plaintiff's injuries were of such trivial nature as to incapacitate her for only four weeks; said testimony being offered at the hearing of defendant's motion for new trial on the question of excessiveness of verdict; (2) in refusing to grant new trial on ground that the jury verdict was grossly excessive, "plaintiff producing none of the many doctors she claimed to have gone to for treatment to support her claim of serious injury"; (3) "in refusing to permit defendant's attorney in his argument to the jury to comment on the large number of lawyers to whom plaintiff had gone with her case, where the record disclosed that the plaintiff had made seventy-four different changes in the answers she gave to her oral deposition taken in her first lawyer's office and had attempted to explain the many changes in her testimony by claiming to be inexperienced and not understanding legal matters and depositions"; and (4) "in refusing to grant defendant a new trial because of material misconduct on the part of the jury during its deliberations in (a) By statements in the juryroom the jurors were informed or left under the impression that the defendant was protected by liability insurance; (b) By statements made in the juryroom the jurors were informed or left under the impression that a part of the damages awarded plaintiff would have to be paid to her attorney as his fee in the case; (c) It was stated in the juryroom that the defendant should have furnished a doctor to attend to the plaintiff; (d) The jurors discussed the Fort Worth-Dallas Highway and from their own personal knowledge and discussion reached a conclusion as to where the alleged accident happened, contrary to the testimony of the driver of the bus in question; (e) There was a discussion in the juryroom as to personal experiences of the jurors with members of their families in regard to scar tissue, that being one of the matters involved in this suit; (f) One of the jurors read a newspaper account of the trial, from which he obtained the information that the Jack Pepper whom plaintiff claimed to have a contract of employment with

was the ex-husband of Ginger Rogers, a very prominent movie actress."

On the trial plaintiff had testified to a heavy object striking her legs below the knees, the missile coming off the bus dashboard while it was making an S-curve; to her turning sick at the stomach, practically fainting; being assisted off the bus at Dallas, lying on a bench, then calling Dr. Jackson who came about one o'clock at night, treating plaintiff and carrying her to the hospital for an X-ray examination; stating that she was taken home in an ambulance, suffering intense pain, the right leg so swollen that she could hardly stand; that she was put to bed, remaining under treatment of Dr. Jackson for three weeks, legs in an elevated position, ice packs applied, taking sedatives. Plaintiff testified to use of crutches for the ensuing two weeks, then a cane for two months; to suffering numbness and leg pains at all times since; experiencing an inability to sleep, or to walk any distance without painful reaction.

On the other hand, Dr. Ruth Jackson, testifying in bill of exceptions on motion for new trial, stated in substance that her initial examination of plaintiff showed a bruising of the right leg, no evidence of fracture; patient being sent home, advised to remain in bed with ice packs on leg. The doctor told of other visits to plaintiff's home, of Mrs. McKinney's coming to "my office the latter part of December 1940, and at that time she was still complaining of tenderness of the leg at the site of the bruise." Dr. Jackson's report of June 1941 referred to plaintiff's trouble as a mild form of periostitis (inflammation of membrane around the bone); further testifying that from last examination, plaintiff's disability had really ceased after about four weeks following the injury; and from a "physical standpoint there was no reason why she should not have gone back to work * * *."

■ There was no error in the court's refusal to consider above testimony on motion for new trial. Defense counsel knew that the particular doctor had attended Mrs. McKinney, from plaintiff's pleading and oral deposition; the record also indicating a fair knowledge by defendant of Dr. Jackson's opinion concerning the alleged injuries; being apprised at the trial that plaintiff had made no arrangement for use of any medical witnesses.

But appellant argues that the newly discovered evidence rule requiring diligence is not applicable "under the facts shown

by this record," citing Atchison T. & S. F. Ry. Co. v. Francis, Tex.Civ.App., 227 S. W. 342, affirmed 113 Tex. 202, 253 S.W. 819, 30 A.L.R. 114; Dixie Gas & Fuel Co. v. Jacobs, Tex.Civ.App., 47 S.W.2d 457. These decisions are not deemed controlling of the instant facts. In the Francis case the Court of Civil Appeals [227 S.W. 346] held that the requirement of diligence had been satisfied, as an earlier discovery of the facts set up in motion for new trial "would demand an impossibility when measured by the strict statutory rule as applied to suits between individuals." Even there, the Supreme Court (113 Tex. 202, 253 S.W. 819, 30 A.L.R. 114) expressly refrained from approving the particular finding of diligence, the case having been properly reversed on other grounds. The present record conclusively establishes the availability of Dr. Jackson, a local physician, to either party at the earlier trial.

■ The Jacobs case, supra, may be termed sui generis in Texas jurisprudence. There the testimony of Luberta Jacobs, a negro woman, that her bed-ridden condition had extended over several months, was found by extrinsic evidence on motion for new trial to have been wholly fabricated, she being then under indictment for perjury; and the Appellate Court, in refusing to apply the Rule of Diligence, said [47 S.W.2d 462]: "Having confined herself in bed for four months previous to the trial, Luberta should not now be permitted to say that appellant was guilty of negligence in failing to discover her fraud." The case at hand, however, is seen to be dissimilar in fact. Plaintiff testified to a total disability only for the first three weeks; afterward undertaking many types of employment, the main complaint being that said injury in effect prevented her from doing work for which she was then under contract (singing and dancing). At most, the testimony of Dr. Jackson bore only upon the amount of recovery. A new trial may be denied where the proffered evidence tends merely to mitigate damages, 31 T.J., New Trial, Sec. 97, p. 110. More in point is Houston Packing Co. v. Benson, Tex. Civ.App., 114 S.W.2d 429, 433, where defendant's reason for not earlier producing the witness was: "We did not know the need for it. It never had occurred to us * * * that any genuine showing could be made that we had been negligent." The Eastland Court held: "A party to a case cannot be permitted to repose such confi-

dence in his cause of action or defense as causes him to close his eyes to evidence available by the exercise of reasonable diligence, and then, when his cause is lost in the trial court, produce such evidence as newly discovered and require another trial to test the effect thereof upon a jury." See also Smith v. Coburn, Tex.Civ.App., 222 S.W. 344; Bond v. Garrison, 59 Tex. Civ.App. 620, 127 S.W. 839, writ ref.; Southwestern Tel. & Tel. Co. v. Davis, Tex. Civ.App., 156 S.W. 1146, writ ref.; Fort Worth & R. G. Ry. Co. v. Keith, Tex.Civ. App., 163 S.W. 142, affirmed Tex.Com. App., 208 S.W. 891; Gulf, C. & S. F. Ry. Co. v. Reagan, Tex.Civ.App., 34 S.W. 796, writ ref.

■ Plaintiff next urges gross excessiveness of verdict, "plaintiff producing none of the many doctors she claimed to have gone to for treatment to support her claim of serious injury." That evidence concerning the nature and extent of injury comes only from lay witnesses, does not deprive it of probative force, if given credence by the jury. The opinion of medical experts, when in conflict, may be disregarded in favor of competent lay testimony, Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943; Texas Life Ins. Co. v. Hatch, Tex.Civ.App., 167 S.W.2d 802; American General Ins. Co. v. Smith, Tex.Civ.App., 163 S.W.2d 849, writ ref. Otherwise stated, appellant's real contention thus far is that the evidence, as a whole, establishes only a trivial injury, and any recovery in excess of $250 should be set aside. Viewing all testimony in a light most favorable to plaintiff (as is our duty under the argument made), we conclude that the verdict in question has sufficient support in the record. Defendant's only eyewitness was J. V. Barber, bus driver, who testified that a metal ticket holder (shown on trial to weigh one and one-eighth pounds) fell from the dashboard onto plaintiff's legs while travelling through Arlington at a speed of two or three miles per hour; plaintiff describing the object as much heavier, book-shaped, size six or eight inches long, four to six inches wide, and about two and one-half inches thick; and an inference that the missile was other than a light ticket holder is seen in the answer of Barber to a question on cross-examination, viz.: "Q. What part of this lady's right leg did that object strike? A. I couldn't tell you now because she was coming down on the floor—she reached

over like—she had her legs crossed like that, and she reached over looking at her shin." Plaintiff's claim of chronic disability was corroborated by other witnesses, among whom was Margaret McCree, who attended plaintiff while in bed for three weeks; then afterwards a similar period during convalescence; describing the right leg below knee as being larger than the left, indicative of swelling; which condition was reiterated by Mrs. Swicord, mother, who described the initial bruise as being between the right knee and ankle, six or eight inches long and one and one-half inches wide; testifying to plaintiff's good health before the accident; to debility and trouble with right limb thereafter. Mrs. McKinney, about 30 years of age, and unmarried in November 1940, testified to giving up her singing and dancing engagement at $50 per week with the Jack Pepper Show, because the injury rendered her unable to pursue such work; to constantly bandaging her limb, with prolonged inflammation and tenderness. Dr. McGuire, defendant's only medical witness, testified to examining plaintiff in December 1943, and the following is part of his cross-examination:

"A. She told me that she had scar tissue in the right leg.

"Q. As a matter of fact, didn't you tell her that frequently scar tissue would result from striking the leg just below the knee and cause a great deal of trouble? A. Of course, scar tissue can result from a blow.

"Q. Right there, scar tissue can result from a blow on the leg just below the knee without breaking the bone? A. Yes, sir.

"Q. And could give a tremendous lot of trouble, can't it? A. If there is enough of it it will.

"Q. It can cause a great deal of pain and suffering, can't it? A. If there is enough of it to interfere with the functions of the muscles and blood vessels and nerves it will, yes sir.

"Q. It can cause weakness in the legs? A. Insofar as it interferes with the function of the nerves and muscles.

"Q. And could cause that leg to be very painful when used? A. It could, yes.

"Q. Scar tissue might also cause injury to the nerves of the legs? A. Yes, scar tissue as thick as your thumb.

"Q. How thick? A. I don't know, as thick as your thumbnail, however, scar tissue only as thick as your thumbnail, you could just barely see that.

"Q. Would it cause injury to the nerves and blood vessels in the leg? A. If the scar was on a nerve it might injure the nerve; if it was not, it would not.

"Q. Could that scar tissue be there and not be on top of the skin and visible to the eye? A. Yes.

"Q. In other words, it could be smooth skin over that scar tissue and the eye of the ordinary human couldn't see it? A. Yes sir."

Testifying in regard to tenderness, Dr. McGuire was asked:

"Q. That is what is called a subjective symptom? A. No, you would tap it with the end of your finger and if that patient involuntarily winced, that would indicate tenderness."

He also stated that inflammation of the periosteum could give trouble.

It may be that the amount here awarded is greater than we would have allowed in a like situation; yet, considering the jury margin of discretion in assessment of damages, we do not feel authorized to revise the finding complained of, H. & T. C. Ry. v. McNamara, 59 Tex. 255; 3 T.J., p. 1100, Sec. 770. In Norwood Bldg. v. Jackson, Tex.Civ.App., 175 S.W.2d 262, 266, and under circumstances quite analogous, we quote the pertinent language of Judge Hale: "Since varying degrees of physical pain are not susceptible of definite expression or ascertainment, the measure of the damages resulting therefrom must of necessity rest largely in the composite judgment and conscience of the jury. If appellee has in fact sustained a nerve injury and if such injury with attendant pain should continue indefinitely in the future, who can say with any degree of certainty that $3,800, if paid now in cash, would be unreasonable compensation for the same? We cannot do so."

■ In reaching the above conclusion, we are fully aware that plaintiff is characterized by defendant's counsel as a "professional claimant," with a background of claims against various concerns for other injuries; and the many changes and alterations in her oral deposition are pointed to as proof of a deliberate attempt to bolster an otherwise trivial injury. These matters were fully developed in cross-examination; and, withal, did not deprive her testimony of all probative force, it being the jury's exclusive province to assess the weight and value thereof.

■ The next point (3 above) charges error in the court's refusal to permit comment by counsel in his jury argument relative to the various lawyers with whom plaintiff had discussed her case. No objection was made to the rigorous cross-examination of plaintiff by defense counsel concerning this; going fully into the many changes personally made by Mrs. McKinney in oral deposition. Even so, plaintiff's zeal in the matter of consulting other attorneys had no bearing on any issue determinable of the controversy; and no showing has been made that such ruling was "reasonably calculated to cause and probably did cause the rendition of an improper judgment," Rule 434, Texas Rules of Civil Procedure; hence, at most, the error is viewed as harmless.

■ It is thought unnecessary to discuss at length appellant's allegations of jury misconduct. Nine jurors testified, three offered by defendant and six by plaintiff, following which the court made detailed findings both of fact and law. As to the charges contained in subdivisions c, d, e and f of Point Four (above), even assuming materiality thereof, the trial court found from majority testimony of the jury that such discussions did not occur; which trial ruling, being supported by evidence, is final, Rule 327, Texas Procedure; 3 T.J., p. 1106, Sec. 773; Blaugrund v. Gish, Tex. Civ.App., 179 S.W.2d 257, affirmed by Supreme Court, 142 Tex. 379, 179 S.W.2d 266. As to discussion by the jury of attorney's fees and defendant's liability insurance, the court in each instance found that casual mention thereof was made by one juror, "but the foreman and others promptly admonished the person making this casual remark that it could not be considered and it was not discussed." It is well settled that a mere mention of improper matter, "followed by prompt rebuke from another juror, and nothing more, will not call for reversal for misconduct." Sproles Motor Freight Lines v. Long, 140 Tex. 494, 168 S.W.2d 642, 644, citing Bradley v. Texas & P. Ry. Co., Tex.Com.App., 1 S.W.2d 861.

■ In this connection the parties have stipulated that appellant was a common carrier operating a bus over the public highways of this state, carrying passengers for compensation, plaintiff being a paid passenger on date of injury. Perforce of Art. 911a, Sec. 11, Vernon's Ann.Civ.St., such bus company was required to protect passengers and property by liability insurance. In Blue Diamond Motor Bus Co. v. Hale, Tex.Civ.App., 69 S.W.2d 228, 229, the San Antonio Court overruled a like contention of jury misconduct, holding: "The law requires bus companies to carry insurance. Section 13, art. 911b, Vernon's Ann.Civ.St. The members of the jury would be presumed to know the law. The mention of insurance would be telling them nothing more than they would be presumed to know. Before we, would be justified in reversing this cause, we would have to be convinced that the trial judge abused his discretion in overruling the motion for a new trial. We are not so convinced." (Citing authorities.)

We conclude that appellant's points are without merit, necessitating an affirmance of the judgment under review.

Affirmed.

BOND, Chief Justice (dissenting).

Viewing the entire record, I am convinced that the assessed damage of $2,500 is grossly excessive for the trivial "bump" on plaintiff's shin. Neither the bone nor flesh were broken or torn, and only subjective symptoms were proven on trial. The facts and circumstances of the occurrence, the extent of the injury related by appellee, and the testimony of doctors reflected in the record, show conclusively that the injury suffered by appellee was superficial, justifying, at least, order of this court for remittitur. Courts are created to see not only that justice be done, but injustice prevented. A remittal of $1,500 should be required, else case be reversed for another trial. I respectfully dissent to the affirmance of the judgment. Clearly, prejudice entered into the verdict of the jury in assessing such damage. Underwriting the verdict by judgment is but to sanction the wrong. Another trial should have been granted.