## PADGITT BROS. CO. v. DORSEY.
(No. 682.)

(Court of Civil Appeals of Texas. El Paso. April 5, 1917. On Rehearing, April 26, 1917.)

1. PLEADING ☞204(5) — GENERAL DEMURRER —PLEADING GOOD IN PART.

In an action on open account supported by plaintiff by the statutory affidavit, a general demurrer to a defendant's entire answer is properly overruled, where defendant files as part thereof a cross-action which is properly pleaded.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 488.]

2. ACCOUNT, ACTION ON ☞7 — "OPEN ACCOUNT"—PRIMA FACIE EVIDENCE.

An action on account for goods sold at different times without agreement as to time or times of payment was founded on an open account not closed by the assent of the party to be charged as to its correctness, in which case the sworn statement of account constitutes prima facie evidence under the statute.

[Ed. Note.—For other cases, see Account, Action on, Cent. Dig. §§ 13–17.

For other definitions, see Words and Phrases, First and Second Series, Open Account.]

3. ACCOUNT STATED ☞5 — ASSENT — NECESSITY.

To be a "stated account" the account must be closed by assent to its correctness by the party to be charged.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 16–29.

For other definitions, see Words and Phrases, First and Second Series, Account Stated.]

4. SALES ☞417—ACTION FOR PRICE—CROSS-ACTION—EVIDENCE.

In an action on an open account for goods sold, where defendant alleged as part of his cross-action that the goods were not up to sample and worthless, evidence held to sustain the action of the trial court in finding against defendant on his cross-action.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1173.]

5. CONTRACTS ☞346(10) — ACTIONS — EVIDENCE.

In a suit on a contract, one cannot recover unless the evidence sustains the exact contract or agreement alleged in the pleadings.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1737–1743, 1746, 1747, 1749.]

Appeal from Midland County Court; Earl Anderson, Judge.

Action by the Padgitt Bros. Company against H. B. Dorsey. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

J. M. Caldwell and H. A. Leaverton, of Midland, for appellant. Chas. Gibbs, of Midland, for appellee.

WALTHALL, J. This suit was originally brought by appellant, a corporation, against appellee, in the county court of Dallas county, Tex., and, on a plea of privilege the suit was transferred to Midland county. The following is the statement of the cause of action:

"That heretofore, to wit, on or about March 1, 1916, and on various dates thereafter, as

shown by the itemized verified statement of account hereto attached and marked Exhibits A to I, inclusive, plaintiff, at the special instance and request of the defendant, sold and delivered to him the various items of goods, wares, and merchandise therein set out, and at the various prices therein charged, the same being the reasonable market value and agreed purchase price of the same, aggregating the sum of $404.57, for which the said defendant promised and agreed to pay and become bound and obligated to pay plaintiff the said sum of money. That said debt is past due and unpaid, and though often requested, the said defendant has failed and refused, and still refuses, to pay the same, or any part thereof, to plaintiff's damage in the said sum of $404.57."

Attached to the petition was the statutory affidavit and properly itemized statement of account marked Exhibits A to I, the prices at which the goods were sold aggregating the amount sued for. Defendant answered by general demurrer, general denial, and further alleged, substantially, that he is engaged in the business of cowboy bootmaker, and that his trade requires the best of materials and products that the market affords. That plaintiff is engaged in the manufacture and wholesale of what is known to the boot trade as "uppers," which are boots completed except the fitting and sewing on the soles and heels. That plaintiff was familiar with the business in which the defendant is engaged at the time of the transaction in question and knew the kind of products and materials required by the defendant's trade. Defendant alleged that during the past two years he had bought great quantities of such "uppers" from plaintiff which were sold by samples, and that plaintiff agreed that the goods sold would compare favorably with the samples; that the samples exhibited were made of high-grade French calfskin; that plaintiff agreed to fill defendant's orders of the same grade and class so long as plaintiff was able to furnish French calfskin favorably comparing with such samples, and would notify defendant when unable to do so; that plaintiff filled the first orders with first-class French calfskin "uppers," but later his orders were filled with an inferior grade of American calfskin uppers which were worthless; that the worthless orders filled by plaintiff for defendant, together with the price paid by defendant for such uppers, are shown by invoices attached to his answer as exhibits; that defendant has paid plaintiff the amount shown in such exhibits in ignorance of the inferior materials used by plaintiff in manufacturing the said "uppers"; that the defects in the material used were latent, and could not be discovered upon inspection, and that defendant did not know of such defects until he had received and paid for said "uppers"; that the "uppers" shown in plaintiff's petition shipped under said agreement to furnish same favorably comparing with said samples, but are inferior in quality and are not French calfskin, and are worthless and unfit for defendant's trade; that defendant has paid plaintiff $783.73 for "uppers" since

January 1, 1916, as shown by the invoices attached; that said "uppers" are wholly worthless to defendant; and that thereby plaintiff became bound to reimburse defendant for said sum of $783.73. Defendant prayed that plaintiff take nothing against him, and that he have judgment in the sum above stated. The answer is verified by defendant as follows:

"H. B. Dorsey, being sworn, deposes and says that the matters and facts set forth in the foregoing answer are true"

—and was subscribed and sworn to before a notary public. To defendant's answer is attached an itemized statement of goods bought by defendant from plaintiff between January 1, and February 25, 1916, and referred to in defendant's answer. To defendant's answer plaintiff presented a general demurrer as follows:

"That the plaintiff excepts to defendant's amended original answer and says that the same is insufficient in law, wherefore he prays the judgment of the court."

Plaintiff also presented to defendant's answer general denial, and to the cross-action says, substantially, that the sales of the goods were not made by samples as alleged, denies that they were worthless, but were of high-class American calf; were furnished to defendant where he inspected, or had an opportunity to inspect, same, and that by inspection defendant could have become aware of any defects therein; that the material was not manufactured by plaintiff, and that defendant had equal opportunity with plaintiff to inspect said goods; that by reason of these facts "caveat emptor" applies, and denied liability for any defects should there be any, alleged that in case there were defects in the goods, it was defendant's duty to reduce any damage, and that defendant has not done so, but has acted in such way as to increase his damage rather than reduce it, should he have sustained any. The court overruled plaintiff's general demurrer, and, a jury being waived, the court heard the evidence and rendered judgment for plaintiff for $76.05, and that defendant take nothing on his cross-action. Plaintiff prosecutes this appeal, and defendant assigns error to the judgment of the court on his cross-action.

[1] Appellant's first assignment complains of the action of the court in overruling its general demurrer to defendant's answer, the contention being that in an action founded upon an open account, supported by the statutory affidavit, an answer by general denial is insufficient though under oath. The answer to plaintiff's cause of action, except that of a general demurrer, was a general denial. The answer did not contain a statement under oath, that appellant's statement of account is not just or true, in whole or in part, stating the items and particulars which are unjust, as required by article 3712, R. S. But appellee did file as a part of his answer a cross-action, and it is not claimed in the

assignment or any proposition thereunder that the cross-action was not properly pleaded or was subject to the general demurrer. If appellee's answer contained any defensive matter properly pleaded, he would have the right to have that part remain in his answer, and the court could not properly, on the general demurrer, strike out his whole answer, as would be the result if the general demurrer was sustained, although it does not join issue on appellant's verified open account. Appellee's general denial, it is true, was no answer to the items pleaded by appellant, but if appellee's cross-action, though not sustained by the proof, was properly pleaded, that part of the answer would be good as against the general demurrer. The result of the failure to properly answer appellant's suit on the open account where any part of the answer is good as a cross-action would be that appellant could have its judgment on its suit on its pleading alone, without evidence to sustain it, to be effected alone in part or wholly by the result of the suit on the cross-action. The first assignment is overruled.

[2, 3] The court struck out from the evidence the appellant's sworn itemized account, supporting its petition. The appellant complains of this action of the court, in its second ground of error. If the appellant's cause of action is founded upon an open account, it was error to strike out the sworn statement of account, as the statute makes it prima facie evidence that it is just and true, that it is due, and that all lawful offsets, payments, and credits have been allowed, in the absence of a sworn answer under the statute joining issue on the items. As stated above, appellee's answer was a general denial, and a cross-action to recover damages on sales of goods made by appellant to appellee at dates between the 3d of January and the 25th of February, 1916, which he alleged to be worthless.

The accounts sued upon are shown to be mutual, current dealings between appellant, a wholesome dealer, and appellee, a retail dealer. The sales and deliveries of the items of account are shown to have been made at different times; the time or times of payment not being stated or alleged to have been agreed upon. It is alleged that the purchase price of the goods was agreed upon. In McCamant v. Batsell, 59 Tex. 363, our Supreme Court said:

"If a single article be sold and delivered, and the price or time of payment be left in uncertainty, this is an open account, because there is a term of the contract to be ascertained; the account is therefore unliquidated; it is open."

To be a stated account it must be closed by the assent to its correctness by the party charged. Whittlesey v. Spofford, 47 Tex. 13; Wroten Grain & Lumber Co. et al. v. Mineola Box Mfg. Co., 95 S. W. 744. The last-cited case refers to Abbott's Law Dictionary for the following as an approved definition of a stated account:

"An agreement between two persons who have had previous transactions, fixing the amount due in respect to such transactions and promising payment."

A very similar definition is given in Ruling Case Law, vol. 1, p. 207, where it is said:

"An account stated is an account which has been rendered by one to another, containing the balance which is alleged to be due, which balance is assented to or admitted to be a correct account of the debt it represents as due from the debtor."

The Supreme Court of Alabama, in Comer v. Way, 107 Ala. 300, 19 South. 966, 54 Am. St. Rep. 93, said:

"An account stated is an account balanced and rendered with an assent to the balance, express or implied, so that the demand is essentially the same as if a promissory note had been given for the balance."

The petition does not allege that the statement of account balanced and sued on was ever closed by the assent of appellee as to its correctness. Where the account is not closed by the assent of the party to be charged as to its correctness it follows that it is still an open account. Our conclusion is that appellant's action is founded upon an open account, and that it was error to strike out the sworn, itemized account, and that appellant should have had judgment for the amount of the account, to be affected only by the result of the suit on appellee's cross-action. What we have said above renders it unnecessary that we pass upon appellant's remaining assignments.

Appellee's one assignment on his cross-action claims error in the trial court's "concluding as a matter of law that the evidence was insufficient to entitle defendant to recover on his cross-action." The issue tendered in appellee's answer is that the goods were sold by appellant to appellee by samples, and that appellant agreed that the goods sold would compare favorably with the samples; that the samples exhibited to appellant were made of high-grade French calfskin, and that appellant agreed to fill appellee's orders from time to time with materials of the same class of the samples so long as appellant was able to furnish French calfskin; and that if appellant was unable to furnish such French calfskin, favorably comparing with such samples, appellant would notify appellee of its inability to fill appellee's orders with such French calfskin. The pleading does not state the date of such agreement, but we take it that it was in August, 1914, at the time of appellee's order for 98 pairs of uppers. The issue of fact tendered as to the quality of goods sold in January and February, 1916, and embraced in the invoices upon which the cross-action is based is that all of the uppers sold by appellant to appellee since January 1, 1916, have been inferior in quality and worthless. The evidence is that appellee had paid ap-

pellant $783.11, the full invoice price of the "uppers" shown in his cross-action, and his cross-action was to recover of appellant that sum. He testified that:

The uppers "were absolutely worthless and had no value whatsoever. I used them and made boots with them and sold the boots, but I could not determine the inferiority of the material by inspection, because the uppers had been stitched, shaped, and glazed over with some kind of gum or polish that covered the grain of the leather. Soon after I sold these boots I had to make good more than 100 pairs, and had many complaints from others. The leather was rotten, and would not wear out the first pair of soles, though they should have worn the first pair of soles out and two additional pairs of half soles. These uppers were worthless and rotten, though I paid for them without knowing that they were worthless."

He further testified:

"I put from $6 to $7.50 worth of work on each pair of boots made with uppers bought from Padgitt Bros. Company, and I sold these boots from $8.50 to $15.50 per pair. When I had so many complaints about these boots, I put on a sale and sold what I had left of the Padgitt Bros. Company boots or rather boots made by me with uppers bought from Padgitt Bros Company at $8.50 per pair, and explained to my customers that I could not guarantee these boots. This sale was in May, 1916. I didn't have many pairs of boots made with Padgitt Bros. Company uppers at that time. Yes, it is true that I sold some boots made with Padgitt Bros. Company uppers and had no complaint from the purchasers of same."

There is neither pleading nor proof as to whether Padgitt Bros. Company was able or unable in 1916 to furnish high-grade French calfskin uppers comparing favorably with the samples exhibited by appellant to appellee in 1914, or whether appellee was notified that appellant was unable to furnish high-grade French calfskin uppers in 1916. The cross-action is based on the theory that appellant was able to furnish high-grade French calfskin uppers in 1916 without alleging or proving that such was the fact. The proof shows that there is a shortage of European tannage due to the war. Witness Thain, foreman of appellant in its shoe-cutting department, said: That he sold appellee the first bill of goods he bought of appellant. That appellee expressed a preference for French calf as over American calf, and that he told appellee he would fill his orders with French calf as long as he could get it, and told him at that time that French calf was getting scarce on account of the war. Witness filled appellee's orders. Said that where calf was ordered he used the best French calf as long as he could get it. Otherwise he used the best American calf. That appellee never asked for a guaranty nor was one given. That on one or two occasions appellee mailed back a pair of uppers which he did not think were as good as they should be, and that on each occasion he mailed to him another pair in its stead. At one time Dorsey made a general complaint to the effect that the American calf being put in the uppers was not giving satisfaction to his trade, and claimed at that time that appellant was not giving him French calf when it might have done so, and witness said such was not true, and that he so advised Dorsey at the time. That during 1914 and the latter part of 1915 appellant was using French calf. That during the first part of 1916, appellant was using the best quality of American calf that appellant could get. That on March 27, 1916, witness took an order from appellee. That Dorsey was then manufacturing boots and was using American calf, the same kind appellant was using and had been using. Hinckley, manager of the shoe department of appellant, met appellee the first time he placed an order with appellant. The last time Dorsey was in appellant's house—time not named—Dorsey made complaint to him about the uppers. It was a general complaint, to the effect that the uppers were not giving satisfaction to his customers. Padgitt Bros. Company does not manufacture the material for their uppers. They buy from the tanners. The leather is never guaranteed. Since the war began it has been impossible to get French calf. The evidence is too lengthy to even state it substantially.

[4, 5] A careful reading of the evidence convinces us that the court was not without evidence to support its finding against appellee on his cross-action. It is quite clear that before January 1, 1916, appellee knew that he was not getting high-grade French calfskin uppers. The evidence does not even tend to show that appellant was able, after January 1, 1916, to fill appellee's orders for uppers with high-grade French calfskin. It is an axiom of the law that, in a suit on a contract, one cannot recover unless the evidence sustains the exact contract or agreement alleged in the pleadings. Mason v. Kleberg, 4 Tex. 86; McGreal v. Wilson, 9 Tex. 427; Gammage v. Alexander, 14 Tex. 418; W. U. Tel. Co. v. Smith, 88 Tex. 9, 28 S. W. 931, 30 S. W. 549; Orynski v. Menger, 15 Tex. Civ. App. 448, 39 S. W. 388; Bagley v. Brack et al., 154 S. W. 247. The cross-assignment is overruled. The evidence having been fully developed on the trial, the judgment of the lower court is reversed in part, and here rendered in favor of appellant and against appellee for the sum of $404.57, and affirmed as to appellee's cross-action; that he take nothing by his cross-action.

## On Rehearing.

The former order reversing and rendering this cause is set aside, and the cause is now reversed and remanded for retrial.

Upon further consideration of the record, the conclusion has been reached that the ends of justice will be better served by reversing and remanding rather than reversing and rendering.

It is so ordered.