## BAIN PEANUT CO. OF TEXAS v. PINSON & GUYGER. (No. 492.)

Court of Civil Appeals of Texas. Eastland.
July 12, 1929.

See, also, 273 S. W. 655; 287 S. W. 87; 292 S. W. 203; and 294 S. W. 536.

Bryan, Stone, Wade & Agerton and B. G. Mansell, all of Fort Worth, and George E. Smith, of Comanche, for appellant.

Callaway & Callaway, of Brownwood, for appellee.

LESLIE, J. This is the third appeal of this case. The first was from a judgment on a plea of privilege, the second and third from trials on the merits. The last trial which was before the court and jury resulted in a judgment on special issues in favor of the plaintiff, and the defendant, Bain Peanut Company, appeals.

The appellees, as partners, brought this suit against the appellant for damages arising from a breach of an alleged contract which was specifically alleged in paragraph 1 of their petition, as follows:

"That * * * on or about the first day of November, 1923, the defendant, Bain Peanut Company, acting through and by its duly authorized * * * agent, Bill Huxford, came to plaintiffs at Proctor, Comanche

County, Texas, and entered into a contract with plaintiffs, by which it was agreed between the plaintiffs and defendant that the plaintiffs, who were dealers in and purchasers of peanuts, would buy peanuts for the defendant on the open market during the peanut season of 1923 and 1924 which was then just beginning, and that plaintiffs would buy peanuts for no other parties. It was agreed that plaintiffs would pay their own money for the peanuts, which were to be purchased at the best price obtainable on the current market from day to day, and would store the said peanuts in a storehouse at Proctor, Texas, agreed on at the time between plaintiffs and defendant. That the said peanuts would be stored in such a manner as to cure and dry properly for shipment to the defendant's central plant or mill at Fort Worth, Tarrant County, Texas, where it was agreed that the peanuts would be shipped as soon as properly cured. That the plaintiffs would pay the storage and insurance on the peanuts while in storage, and drayage to the cars when they should be ready to ship to the defendant, as aforesaid. It was agreed that defendant would reimburse the plaintiffs for the original cost of the peanuts and for their insurance, storage and drayage, and pay the plaintiffs for their services a commission of ten cents on every bushel which they should buy for the defendant."

In subsequent paragraphs of the plaintiffs' petition, estoppel and ratification were pleaded, and further:

"That the plaintiffs, all during the said peanut season, conferred from time to time with the defendant's agent (Huxford) and acted under the direction of the defendant's agent in making the purchases and in storing and handling the peanuts."

It was alleged that under and by virtue of said contract the plaintiffs purchased 6,981 bushels of peanuts of an aggregate value of $12,455.78, and that, after said peanuts had been purchased, insured, stored, cured, and handled in every way in accordance with the above-mentioned contract, the plaintiffs demanded of the defendant, Bain Peanut Company, that it accept the shipment of peanuts and pay plaintiffs therefor according to the original contract; that the defendant refused to comply with the contract, and rejected the peanuts, which were later sold by the plaintiffs for $7,374.20, the best price obtainable. This lawsuit is for the difference between that sum and the amount paid by plaintiffs for the peanuts, together with the sum of $46.10 drayage, $178.89 insurance, and an alleged commission of $698.10, aggregating $6,004.67, an alleged loss proximately resulting to plaintiffs by reeason of the defendant's breach of the alleged contract, performable in Comanche county, Tex.

The defendant interposea a plea of privi-

lege to be sued in Tarrant county, Tex., and, subject to this plea, entered a general denial, etc.

▮ The proposition on the court's action in overruling the plea of privilege to be sued in Tarrant county arises from the overruling of the defendant's demurrer to the plaintiffs' controverting affidavit. The plaintiffs rested their right to venue in Comanche county upon the ground that the suit was against a private corporation on a cause of action arising in whole or in part in that county. This involved plaintiffs' right to hold venue in that county under subdivision 23, art. 1995, Rev. St. 1925, which subdivision has recently been held discriminatory against private corporations, and therefore unconstitutional. See Dublin Mill & Elevator Co. v. Cornelius (Tex. Civ. App.) 5 S.W.(2d) 1027; Houston Lighting & Power Co. v. Jenkins (Tex. Civ. App.) 5 S.W.(2d) 1030. However, those cases have recently been overruled by the Commission of Appeals in an opinion in the case of Grayburg Oil Co. v. N. P. Powell, approved by the Supreme Court, 15 S.W.(2d) 542. The point calls for no further consideration and the proposition presented is overruled.

▮ One of the main contentions of the appellant is that the trial court erred in refusing to grant a new trial because of the newly discovered evidence of the witness Chisholm. More than ordinary showing is made in support of this proposition. There is, however, one reason appearing which forces us to the conclusion that the case should not be reversed because of this matter alone. At the time of the former trial, appellant had notice that this witness probably knew facts material to the case. When the witness was then asked by appellant's attorney about the matter, he did not disclaim any such knowledge, but replied that, if he was put on the witness stand, he would tell the truth. This statement alone implied some knowledge. Appellant showed no lack of diligence by its failure to place him on the stand at that trial, not knowing what his testimony would be, and the trial being then in progress. Had this occurred at the last trial of the case, when there was no time in a legal way to ascertain what he knew without being bound by what he said, we would be inclined to hold that appellant was fully acquitted of any want of diligence; but, a year or more intervening between that time and the time the case was finally brought to trial, the appellant had ample opportunity to take the depositions of the witness and compel him to disclose his knowledge of the facts. Appellant having failed to do so, we think we would not be justified in holding that the trial court abused its discretion in refusing a new trial. Particularly do we think we are justified in this holding, in view of the fact that the witness Chisholm, when later approached, voluntarily made and delivered to

appellant an affidavit setting forth the testimony it is claimed he would give on a retrial of the cause. This proposition is overruled.

■ The judgment of the court below is challenged on the ground that there was no evidence of any authority on the part of Huxford as agent of the Bain Peanut Company to make the contract in question. The same question was presented on the former appeal, and it appears that at the last trial the cause was tried on the same pleading as at the first trial and on substantially the same testimony. (Tex. Civ. App.) 287 S. W. 87, 89. In discussing the above contentions on the former appeal, this court said:

"The charge as a whole was excepted to and a peremptory instruction requested because the evidence introduced had no basis in appellees' pleading. It is asserted that the plaintiff's petition was based upon an alleged employment of appellees by Huxford as sub-agents for appellant to buy peanuts in unlimited quantities on their own judgment and that the evidence showed conclusively that Huxford had no such authority. It is agreed that Huxford did not have authority to employ appellees as sub-agents to buy peanuts for appellant in unlimited quantities on the unrestrained judgment of appellees as to quantities and price, but we do not concur in appellant's claim that such was the case made by the petition. The petition alleged specifically that the peanuts were bought from day to day under the immediate direction and control of Huxford. This allegation is a sufficient answer to the contention noted."

From the above quotation it conclusively appears that this court on the former appeal held that the plaintiff's petition sufficiently alleged a cause of action warranting recovery on the contract pleaded. The evidence supports the conclusion that the peanuts were, in fact, purchased under Huxford's supervision. Thus it appears that on the former appeal it was expressly held that Huxford had authority to make the questioned contract— and that the pleadings were interpreted as declaring upon such contract as being a sufficient basis for recovery. On the former appeal, the case reached the Supreme Court, and, upon an opinion by the Commission of Appeals, the Supreme Court reversed the judgment of this court, and reformed and affirmed the judgment of the district court. In the commission's opinion this language is used:

"While there are thirty assignments of error contained in the application, none, other than that raising the question here discussed, presents an error which would require reversal or reformation of the judgment of the trial court." 292 S. W. 203, 204.

The assignment sustained in that opinion raised a question of the right to recover interest as damages, etc. On motion for rehearing, the Commission of Appeals in its second opinion used this language:

"In our former opinion in this case we state that, 'while there are thirty assignments of error contained in the application, none, other than that raising the question here discussed, presents an error which would require reversal or reformation of the judgment of the trial court.' 292 S. W. 203. We are now of the opinion that one of the assignments does present reversible error." 294 S. W. 536.

The assignment this time sustained was to the action of the court in admitting hearsay testimony. The judgments of the district court and the Court of Civil Appeals were reversed upon the recommendation of the commission upon that sole question.

Evidently the Supreme Court, through said opinions by the commission, approved the interpretation or construction placed on the pleadings by this court on the former appeal, and resolved against the appellant the contention that Huxford had no authority to make with Pinson & Guyger said contract. The assignments raising the question of no evidence of any authority on the part of Huxford as agent of the Bain Peanut Company to make the questioned contract having been considered (as evidently appears from the last quotations) and overruled by the commission, with the approval of the Supreme Court, as well as by this court, and the pleadings remaining unaltered, the testimony admittedly the same, the trial court having followed the former holdings, and the errors working a reversal of the judgment of the trial court on the first trial having been removed, we believe that, in obedience to said opinions, said assignments (again appearing in this record presenting the same contention) should be overruled, and the judgment affirmed. In doing so we regard the questions presented by the assignments as no longer open questions in this court.

■ There is no question but that the evidence in this record is sufficient to support the recovery, if the contract declared upon in the petition is construed as alleging a contract for the purchase of peanuts from the appellees at such a price as to allow them to realize a profit of ten cents per bushel above the price paid and the necessary expenses incurred in preparing them for shipment, etc. On the other hand, if the contract declared upon be construed as one of subagency, then the evidence fails to establish authority in Huxford to bind the appellant thereby. The identical petition which is now before us has been construed by this court and evidently by the Supreme Court as declaring upon a contract of purchase. Therefore, if we should now view the petition differently, we would not be authorized, as we understand the law and the powers of this court, to over-

rule what clearly appears to be a decision or holding of our Supreme Court.

On original hearing, the majority reformed the judgment of the trial court so as to exclude all items of recovery, except the actual purchase price paid by appellees for the peanuts. Both parties have filed motions for rehearing, the appellant insisting that the judgment of the trial court be reversed and remanded on account of the insufficiency of the evidence to support any recovery, and the appellees insisting that the judgment of the trial court be in all things affirmed. Appellant's motion for rehearing will be overruled.

We believe that the agent Huxford was as fully authorized under the evidence to bind his principal for each element of the contract pleaded as he was to bind it to repay to appellees the purchase price of the peanuts, and that the contract in all of its terms was entire and not severable, and would support a recovery for the entire amount of the judgment below, if any recovery at all, and appellees' motion for rehearing is therefore granted.

The judgment heretofore entered by this court, reforming the judgment of the trial court, and affirming same as reformed, is set aside and the original opinion withdrawn, and, in lieu thereof, judgment will be here entered in all things affirming the judgment of the trial court, and this opinion will be substituted for the original.

FUNDERBURK, J. (dissenting). The writer is unable to concur in the opinion of the majority. The majority opinion simply adopts the construction of the pleadings in the former appeal. (Tex. Civ. App.) 287 S. W. 87. No effort is made to justify that construction, and apparently the sole justification for now adhering to it is the fact that the Supreme Court, in overruling all assignments in a writ of error prosecuted from that judgment, except two relating to entirely different questions, is to be presumed to have passed upon and adopted such construction. I do not think it is our duty to adhere to a construction of a pleading which is manifestly wrong upon the authority of a mere presumption that the Supreme Court has passed upon it and approved it.

I think this court erred in its opinion upon the former appeal in failing to distinguish between allegations of the terms of the contract and allegations of operations under the contract. Upon that appeal, it was contended by the appellant that the judgment should be reversed because plaintiff's petition was based upon an alleged employment of appellees by Huxford as subagents for appellant to buy peanuts in unlimited quantities on their own judgment, and that the evidence showed conclusively that Huxford had no such authority. In overruling that contention, this court for answer replied:

"The petition alleged specifically that the peanuts were bought from day to day under the immediate direction and control of Huxford. This allegation is a sufficient answer to the contention noted."

Manifestly it was not a sufficient answer, unless it was an allegation of one of the provisions of the contract. Certainly, if the contract was one of employment, authorizing the agents to buy peanuts in unlimited quantities on their own judgment, any question of the agent's authority to make such contract could not be affected by anything done under the contract short of a ratification or estoppel. The judgment was not rested upon ratification or estoppel, nor, indeed, could it have been under the evidence in the case. The alleged terms of the contract are correctly set out in the majority opinion. It will be noticed that it is not one of such provisions that the peanuts were to be "bought from day to day under the immediate direction and control of Huxford." That allegation occurs in a recitation of what was done under the contract, and at a time subsequent to the making of same. Some of the provisions of the contract as alleged were that:

"Plaintiffs * * * would buy peanuts from the defendant on the open market during the peanut season of 1923 and 1924 * * * and that plaintiff would buy peanuts for no other party. It was agreed that plaintiffs would pay their own money for the peanuts which were to be purchased at the best price obtainable on the current market from day to day." (Italics ours.)

In making proof of the contract containing such provisions, it would have been a material variance to offer evidence of another provision (not alleged) "that the plaintiffs all during the said peanut season" were to confer "from time to time with defendant's agent (Huxford)," and to act "under the direction of the defendant's agent in making the purchases and in storing and handling the peanuts." Such allegation was not only not made as a provision of the contract, but was not attempted to be proved as such, but merely of what was done under the contract. It is therefore clear to me that upon the former appeal this court sustained a recovery in behalf of appellants upon an entirely different contract in terms and legal effect than the one alleged in the petition. In order to bind appellee, it was necessary to show, not that Huxford had authority to buy the peanuts or to make some kind of contract, but that he had authority to make the particular contract alleged. The principle is so well established as often to be called axiomatic that in a suit upon a contract the identical contract alleged must be proved. Padgitt Bros. Co. v. Dorsey (Tex. Civ. App.) 194 S. W. 1124; Gammage v. Alexander, 14 Tex. 418; Bagley v. Brack (Tex. Civ. App.) 154 S. W. 247; Western Union Tel. Co. v. Smith, 88 Tex. 9,

28 S. W. 931, 30 S. W. 549. The principle underlying this rule likewise requires that proof of authority of an agent to make a contract means the particular contract in question and not another.

Plainly the contract alleged is not one by which appellees agreed to sell peanuts to Bain Peanut Company. The contract alleged is one by which appellees were employed, not to sell peanuts to Bain Peanut Company, but to purchase peanuts from day to day on the open market for the best price obtainable, as its agents and representatives, and for which services, among other things, a specified compensation was to be paid them. In operating under the contract alleged, the ownership of the peanuts would pass immediately from the sellers in the open market, not to appellees, but to Bain Peanut Company. True, according to the allegations, appellees were to pay for the peanuts with their own money, but the allegations make clear that this was an advancement for Bain Peanut Company for which reimbursement was sought. What authority had Huxford to agree that Bain Peanut Company would pay appellees ten cents a bushel as a commission to purchase peanuts for it? If any such exists, it is implied by law from Huxford's status as agent with authority to purchase peanuts, for it cannot be gainsaid that there is not a word of testimony to show any express authority or any facts other than that of agency, and authority to purchase peanuts, from which such authority can be inferred. If he had implied authority to make such contract, he could just as well have bound his principal to pay a salary of, say, $100 a month. It certainly cannot be that any such authority exists by implication. What authority was Huxford shown to have had to bind Bain Peanut Company to reimburse appellees for such sums as they should advance to purchase peanuts? He had just as much authority to contract for a loan with the Proctor Bank for $10,-000 with which to purchase peanuts and thereby obligate Bain Peanut Company to repay it, for in either case it must be implied by law from the fact of agency and authority to purchase peanuts alone, there being no other evidence of authority. Suppose the agent had contracted with the bank for the $10,000 loan and had wholly misapplied it. Could it be contended for a moment that the bank could recover the advances from Bain Peanut Company upon proof of no other authority on the part of Huxford than is shown by this record, which, as said before, consists solely of the fact he was agent, with authority (limited at that) to purchase peanuts. If Huxford had no authority to contract for the payment of the commissions, then, whatever other authority he had, he could not bind appellant by the particular contract alleged. As said in the majority opinion, the contract is one and indivisible. The authority requisite to make such contract must include authority to make every part of it.

Independently of everything else, the principle that one must recover, if at all, on the precise contract alleged, forbids a recovery in this case, because, while the pleading alleged that one provision of the contract was that appellant would pay appellees ten cents a bushel for all peanuts purchased under the alleged contract, appellees themselves testified that the contract was that ten cents per bushel was to be paid for peanuts that were stored and five cents a bushel for such as were loaded on cars directly from wagons. Appellees thus affirmatively disproved the existence of the contract alleged.

Much more might be said argumentatively to show that the contract alleged is not properly susceptible of any construction that would bring it within the authority of Huxford to make, as disclosed by undisputed evidence, but the above, it is thought, is sufficient to show the basis of my conclusion that the judgment of the trial court should be reversed and remanded.