## HOUSTON PACKING CO. v. BENSON.
### No. 1756.

Court of Civil Appeals of Texas. Eastland.

Feb. 18, 1938.

Rehearing Denied March 18, 1938.

Boyles & Atkinson and Frank G. Dyer, all of Houston, for appellant.

Guynes & Colgin and Bernard A. Golding, all of Houston, for appellee.

GRISSOM, Justice.

Plaintiff, Dr. S. O. Benson, sued Houston Packing Company, defendant, for damages alleged to have been sustained by him while inspecting meat in defendant's packing house, about November 1, 1934. Plaintiff was a veterinary surgeon, employed by the United States Government, and detailed to defendant's plant for the purpose of inspecting meat, etc., and was working on defendant's cattle killing floor at the time of his injury. Briefly stated, so far as it is material here, plaintiff alleged and testified, in substance, that while he was so engaged and after he had condemned a carcass as being unwholesome, he started across the room of defendant's cattle killing floor for the purpose of washing his hands and sterilizing his instruments, as was his custom after a carcass had been condemned; that one of defendant's employees, a negro called Sparkplug, saw the plaintiff walking across the floor and shoved at him a carcass carried by a conveyer attached to the ceiling; that in order to avoid being struck by the carcass so shoved at him, or in his direction, by defendant's employee, plaintiff attempted to stop suddenly, which caused his feet to slip from under him, causing him to fall to the floor and suffer serious bodily injuries.

In accord with the verdict of the jury the court rendered judgment for the plaintiff against the defendant for $19,524.75, from which judgment the defendant has appealed. The cause is now properly before this court. The parties will be referred to as they appeared in the trial court.

The defendant assigns as error the overruling of the defendant's motion for new trial: (1) "Because the finding of the jury in answer to Special Issue No. 1 that defendant's employee, Sparkplug, was hanging off or switching cattle at station or bed No. 5 at the time of the accident in question is so contrary to the great weight and preponderance of the evidence as to be clearly wrong." And (2) "because the finding of the jury in answer to Special Issue No. 2 that defendant's employee, Sparkplug, switched the carcass of an animal in the direction of plaintiff just as plaintiff was approaching or about to enter the pathway of station No. 5 is so contrary to the great weight and preponderance of the evidence as to be clearly wrong * * *." The plaintiff testified in part as follows: "I looked to see if I had time to go to the sterilizer safely * * *. As I looked at him [Sparkplug] he was looking at me, so I knew, reasonably knew, that he would not intentionally hit me with a carcass, knowing that I was passing in the path of the line where he was to throw it. As I was attempting to go to this sterilizer * * * I looked at the man and saw him looking at me, and I continued to go on to the sterilizer, walking as fast as I could in safety, and he threw the carcass, and I had to stop quick to keep it from hitting me, or else to run, and I thought it was safer to stop, so I attempted to stop quick, and as I stopped my feet went out from under me and that is all I remember. * * * No warning or notice was given me before that carcass was shot." Dr. John Van Eenanaan testified in part as follows: "As Dr. Benson was approaching the place located on Exhibit 'f' toward the sterilizer, the carcass was being moved on No. 5 and hit him, or I think it hit him; I saw the carcass going down No. 5; I saw Benson fall; I am positive it hit him; I would say the carcass hit him, that is my version of the matter. I was looking at Benson, I wasn't watching the

carcass. The carcass knocked him down and he fell, his feet straight out, falling right on his back, his head hit the floor. The employee in charge of the carcass on No. 5 was James. His nickname is Sparkplug, a tall, colored man, and I would know him if I saw him."

The findings of the jury in response to special issues 1 and 2, complained of in the two assignments of error heretofore quoted from, are directly and in detail supported by the testimony of the plaintiff and Dr. Van Eenanaan. There are many facts and circumstances in evidence tending to support their version of the cause of injury. There is much conflict in the testimony. There is ample evidence from which the jury could have found that defendant's employee, Sparkplug, was not switching cattle at station No. 5 at the time of plaintiff's injury, but that he had become ill a few minutes prior thereto and had gone home. Most, if not all, of the defendant's employees who were present on the cattle killing floor at the time of the doctor's injuries, as well as those who appeared immediately afterward, testified, either positively or negatively, to facts which would have authorized the jury to have answered both of said issues in the negative. However, we think this conflict in the evidence constituted a question for the decision of the jury. The jury saw the witnesses as they testified and had the right to believe the testimony of the plaintiff and Dr. Van Eenanaan and to disbelieve the testimony of defendant's employees who testified, in substance, to the contrary. "There is much in looking at the man who testifies." Houston & T. C. R. Co. v. Gray, 105 Tex. 42, 143 S.W. 606. It was said in the case of Blum Milling Co. v. Moore-Seaver Grain Co., Tex.Com.App., 277 S.W. 78, 82: "It is not the function of an appellate court to substitute its own judgment of the weight of the evidence, any more than it would have been proper for the trial judge to have instructed the jury to believe Swearenger and disregard all disputing testimony." With definite testimony supporting the jury's answers to special issues Nos. 1 and 2 we do not have the authority to substitute our answer for that of the jury, and we are bound to find that the evidence is sufficient to sustain such findings. Goodrich v. Pandem Oil Corp., Tex.Com.App., 48 S.W.2d 606, 609; Pounds v. Minter, Tex.Com. App., 13 S.W.2d 351, 352; City of Abilene v. Moore, Tex.Civ.App., 12 S.W.2d 604, 606, writ ref.; Merrill v. Louisiana Ry. & Nav. Co., Tex.Civ.App., 4 S.W.2d 568; Moore v. Marines, Tex.Civ.App., 269 S.W. 825; 3 Tex.Jur. 1097.

Defendant further assigns as error the action of the court in overruling its motion for new trial because of alleged newly discovered evidence. The newly discovered evidence is in substance that Mr. Childress, defendant's general manager, was in Washington, D. C., after the trial of the case; that he obtained from the General Counsel for the United States Employees' Compensation Commission the record before such commission, wherein Dr. Benson had applied for and received compensation. Mr. Childress found among said records a report signed by Dr. C. H. Horscher, inspector in charge of the Bureau of Animal Industry at Houston, who was plaintiff's immediate superior. In said report in answer to question "27. Describe in full how injury occurred," Dr. Horscher had written, "While walking across the killing floor he slipped on the floor, causing injury to head and spine." In answer to question "34. Was injury caused by a third party other than a government employee or agency," Dr. Horscher had written the answer, "No." This report by plaintiff's immediate superior was required of him by law. 5 U.S.C.A. § 774. Dr. Horscher was not present when the plaintiff was injured, nor was he a witness on the trial of the case or on the hearing of the motion for new trial. If the quoted statements from Dr. Horscher's report were the result of information given him by plaintiff, defendant should have presented such proof on the motion for new trial. The burden was upon the defendant to prove facts entitling it to a new trial. The written statements of Dr. Horscher are clearly hearsay and inadmissible.

Defendant's general manager found in the record before the Compensation Commission plaintiff's Notice of Injury and Claim for Compensation. In said claim, in response to question "2. Cause of Injury," there was written: "Slipped and fell on my back and head. 3. Nature of Injury. Injured my back and head. 4. Names of Witnesses to Injury: Chas. Jones, Dr. J. J. Van Eenanaan." On the back of Dr. Horscher's report was a space for "Statement of Witnesses." Therein, above the signature of J. Van Eenanaan,

was found the statement: "Sameil C. Benson on November 1st slipped on the killing floor and fell on his back and head." This is substantially the newly discovered evidence upon which the defendant depends for a reversal of the judgment for the refusal of the district court to grant a new trial.

Defendant's general manager knew Dr. Benson was a United States employee while working in defendant's plant. He testified, in part:

"Q. Didn't you know there was a law passed entitling him to compensation when he was injured? A. I believe I had a general knowledge that most all Federal employees are covered, but in his particular case I didn't know.

"Q. You didn't take any care to make that examination before the trial? A. No sir.

"Q. You knew when a man is injured that way that before he can get compensation he must make a report? A. Yes sir.

"Q. You knew that before the trial? A. Yes sir."

In answer to questions, in effect, why the witness, Mr. Childress, did not attempt to obtain this information prior to the trial, he answered: "We did not know the need for it. It never had occurred to us * * * that any genuine showing could be made that we had been negligent." More than a year before the trial defendant had filed a plea in abatement in which it was alleged, in substance, that the plaintiff had assigned to some person or corporation an interest in his claim, and defendant contended that there was a lack of necessary parties plaintiff, for which reason the suit should be abated. The plea in abatement was signed by the counsel who represented the defendant in the trial of the cause and before this court. In an affidavit attached to plaintiff's answer to defendant's motion for new trial plaintiff's counsel swears that defendant's counsel "knew long prior to the filing of the case that Dr. S. O. Benson was covered by employees' compensation with the United States Employees' Compensation Commission, a department of the United States Government." Upon the trial of the case, the defendant attempted to prove the amount of compensation that had been paid plaintiff. At the time defendant's general manager saw the records in connection with plaintiff's claim before the Compensation Commission, he was told that if plaintiff's counsel consented, certified or photostatic copies of such records could be obtained. Upon request plaintiff's counsel did consent and copies were obtained. Plaintiff's counsel swore that if he had been so requested prior to the trial of the case he would have then consented.

Referring to the plaintiff's statement found in his Claim for Compensation to the effect that the cause of his injury was that he "slipped and fell on his back and head," plaintiff swore: "that said statement was presented to him by Dr. C. H. Horscher, who was Inspector in charge R.A.I.; that on reading the description of said injury, he asked Dr. Horscher whether it was necessary to go into detail about same, stating to Dr. Horscher, at that time, and discussing with him the fact that a carcass, which was being switched on No. 5 on the cattle killing floor at the Houston Packing Company, was the direct cause of his falling, in view of the fact that he had attempted to avoid being struck by said carcass and had stopped abruptly, and had slipped and fallen; and that he thought that he had been brushed by the carcass in question. That Dr. Horscher stated that there was no need of including any of the circumstances or facts that led up to the accident, and that it was merely necessary to show the immediate accident and the injuries, and with that explanation affiant signed the statement in question; and that he would not have signed the same except for the explanation which had been made to him by Dr. Horscher, that a detailed narrative of the facts leading up to the fall was unnecessary; and that this affiant has always claimed that he fell and slipped on the cattle killing floor of the Houston Packing Company, while walking across same, and has always stated that the cause of his having slipped was an effort made by him to attempt to avoid injuries from the carcass of an animal, which had been shot directly in his direction. * * * That he made a full and complete statement to Dr. Horscher, when Dr. Horscher came to see him; and that, in view of the fact that it was not deemed necessary to show negligence on the part of the Houston Packing Company, but only necessary to show injury and incapacity, he did not insist on Dr. Horscher changing the statement, which was presented to him showing how the injury had occurred as said Dr. Horscher assured him that all facts

and details, leading up to the accident, were immaterial in that connection, and for the purposes for which the statement was being prepared and forwarded to the United States Employees Compensation Commission at Washington, D. C.; and that as he was suffering intense pain from his injuries," etc.

Plaintiff further swore in substance that a few days after the accident while plaintiff was in the hospital that he reported the facts surrounding his injuries to his counsel in the same manner as testified to on the trial of the case. Plaintiff's counsel testified by affidavit that prior to the middle of November, following the injury on November 1, 1934, that counsel, at plaintiff's request, called upon him at the hospital, and that plaintiff then related the facts surrounding his injuries in the same manner as he did upon the trial of the case. Dr. Moore, who treated plaintiff immediately after his injury, and for a long time thereafter, and who was paid for his services by the United States Government, swore: "That about the 5th day of November, 1934, (the day before he signed his claim for compensation in which the statement alleged as newly discovered evidence is found) in getting the history of the injury from Dr. S. O. Benson, he informed me that as he was approaching the pathway of No. 5 on the cattle killing floor of the Houston Packing Company, the carcass of an animal was shot towards him with great rapidity, and that in order to avoid being struck thereby, he stopped abruptly, and that his feet slipped from under him, and he fell to the floor. At no time in any of my conversations with Dr. S. O. Benson did he ever say to me that he had fallen by merely slipping on the floor while walking across the same in the discharge of his duties; but he always connected his injury with the fact that a carcass had been shot at him, and in order to avoid being struck by it, he had stopped suddenly. He also stated the negro in question was a mean negro, and had purposely tried to hit him with the carcass."

In this connection we call attention to the fact that upon the trial of the case an employee of defendant, C. J. Hill, testified that he visited Dr. Benson twice, and that on each occasion he inquired of plaintiff how the accident happened, and Dr. Benson replied that he had slipped, but said nothing with reference to a fall

being occasioned by a carcass being shoved in his direction. The newly discovered evidence is largely cumulative of the testimony of Hill and impeaching in nature.

 By way of summary we call attention to the following material facts, much of which is suggested by appellee's brief, portions of which are adopted: (1) The accident occurred on November 1, 1934. (2) It was definitely alleged in plaintiff's pleadings that Sparkplug shoved a carcass at plaintiff as he was crossing defendant's killing room floor after the condemnation of a beef for the purpose of washing his hands and sterilizing his instruments, and plaintiff, in stopping suddenly to avoid being struck by the carcass, was caused to fall and suffer injury. (3) Defendant filed its plea in abatement more than a year prior to the trial of the case, which plea was to the effect that some person or corporation, not a party plaintiff, had been assigned an interest in plaintiff's suit. That defendant's counsel was informed prior to the trial, in substance, that the United States Employees' Compensation Commission was subrogated to plaintiff's claim in part, but not a necessary party plaintiff, and that plaintiff was being paid compensation. (4) It is apparent that if the diligence exercised in obtaining the newly discovered evidence had been exercised prior to the trial, defendant could have procured such evidence for the trial of the case. That no inquiry is shown to have been made of Dr. Horscher who was in charge of the United States employees, such as plaintiff, at Houston, and whose statutory duty it was to report thereon to the Employees' Compensation Commission, or of the United States Employees' Compensation Commission. The real reason for such failure to make inquiry is apparent from the testimony of defendant's general manager: "Of course, we did not know the need for it. It never had occurred to us that any genuine showing could be made that we had been negligent." A party to a case cannot be permitted to repose such confidence in his cause of action or defense as causes him to close his eyes to evidence available by the exercise of reasonable diligence, and then, when his cause is lost in the trial court, produce such evidence as newly discovered and require another trial to test the effect thereof upon a jury. The United States

statutes require that such an employee injured in the performance of his duty shall, within 48 hours after the injury, make, or cause to be •made, written notice to his immediate superior. Such immediate superior in this case was Dr. Horscher, of Houston, Tex. The statutes prescribe the requisite information to be contained in such notice. It requires a written claim for compensation by the injured employee. The statute prescribed the form and requisites of a claim for compensation. The statutes require a report by an employee's immediate superior. See 5 U.S. C.A. § 765, et seq. The defendant is charged with notice of the law and of the facts that would be revealed by an inquiry reasonably suggested thereby.

In Conwill v. Gulf, C. & S. F. Ry. Co., 85 Tex. 96, 102, 19 S.W. 1017, 1020, it was said: "A new trial will not be granted on the ground of newly-discovered evidence, unless it is made to appear that it has come to the knowledge of the applicant since the trial; that it could not have been sooner discovered by the exercise of diligence; that it is not merely cumulative; that it is not for the purpose of impeachment. \*. \* \* The appellant further complains that she was surprised by the testimony introduced by the defendant showing that she was not injured at the time and place referred to. The defense of noninjury was specifically pleaded, and the plaintiff, having gone to trial confronted by the plea, must be held to have had notice of the facts relied upon to defeat her action. Such is the object of pleading."

In Redden v. Pure. Oil Co., 86 S.W.2d 874, 879, we said:

"It is apparent that with such information in the petition the plaintiff in error should have known that the defendant in error expected to prove that which it had alleged, and by the exercise of due and proper diligence could and would have learned of the facts that they now desire to establish upon the trial of another case."

"One of the commonest grounds on which new trials are applied for is newly discovered evidence, but applications based on this ground are not favored. 'Such motions,' say the Supreme Court, 'are received with careful scrutiny, and are held to address themselves very much to the discretion of the court; and. where the court has refused an application made upon this ground, the appellate court will not reverse, unless it shall appear that the court below has not exercised its discretion according to the established rules of law.'

"When application is made for a new trial on the ground of newly discovered evidence, it is necessary that the applicant show that knowledge of the existence of the new evidence was acquired subsequent to the former trial, and that it was not owing to the want of diligence that such evidence was not discovered and obtained in time to be used when the case was tried; that the new evidence is material and not merely cumulative, and that, if admitted, it would probably change the result upon another trial. The burden is upon the movant to establish each of these facts; if he does so, a new trial should be awarded as a matter of right, and a refusal thereof constitutes reversible error." 31 Tex.Jur. p. 90, § 81.

■ We think defendant has failed to show that it was not owing to want of diligence that the evidence here was not discovered prior to the trial. With the explanations thereof made, we think that the statements relied on as newly discovered evidence, not being necessarily inconsistent with the testimony of said witnesses on the trial of the case, but merely incomplete statements of the facts with reference to the injury, are such that proof of the statements found with the Compensation Commission would not probably change the result upon another trial. The newly discovered evidence is largely, if not entirely, impeaching in its nature and much of it is cumulative of testimony adduced on the trial. We are of the opinion that the trial court did not abuse its discretion in refusing to grant the motion for new trial. Waples & Co. v. Overaker & Co., 77 Tex. 7, 13, 13 S.W. 527, 19 Am.St.Rep. 727; · Galveston, H. & S. A. Ry. Co. v. Waldo, Tex.Civ.App., 77 S.W. 2d 326, 330; Moore v. Wooten, Tex.Com. App., 280 S.W. 742, 748; Pinson & Houston & T. C. Ry. Co. v. Davenport, 102 Tex. 369, 374, 117 S.W. 790; Bain Peanut Co. of Texas v. Guyger, Tex.Civ.App., 19 S.W.2d 203.

Defendant's assignments of .error are overruled.

The judgment is affirmed.